# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

BRIAN K. ALFORD,
    Plaintiff,

vs.

GARY MOHR, et al.,
    Defendants.

Case No. 1:15-cv-645

Dlott, J.
Litkovitz, M.J.

**ORDER AND REPORT
AND RECOMMENDATION**

Plaintiff, an inmate currently incarcerated at the Toledo Correctional Institution, brings this action alleging violations of his civil rights by multiple defendants during his prior incarcerations at the Lebanon Correctional Institution (LeCI) and Warren Correctional Institution (WCI).[1] This matter is before the Court on the following motions: (1) plaintiff's motion to supplement the second amended complaint pursuant to Fed. R. Civ. P. 15(d) (Doc. 43); (2) plaintiff's motion for leave to supplement the second amended complaint under Fed. R. Civ. P. 15(d) and for appointment of counsel (Doc. 48), defendants' opposing memorandum (Doc. 61), and plaintiff's reply (Doc. 86); (3) plaintiff's motion for service on Gary Mohr, for preliminary injunction, and to appoint counsel (Doc. 67) and defendants' opposing memorandum (Doc. 76); (4) plaintiff's motion for documentation (Doc. 74); (5) plaintiff's motion for extension of time to file a response in opposition to defendants' motion to dismiss (Doc. 56) and a reply in support of plaintiff's request for entry of default (Doc. 45) and motion for leave to supplement the second amended complaint and for appointment of counsel (Doc. 48) (Doc. 75); (6) plaintiff's motion to strike the Order granting him leave to proceed *in forma pauperis* on appeal (Doc. 90); (7)

---

[1] To date, summons have been returned executed for defendants Dr. Eddy, Norm Evans, Cynthia Hill, Lt. Nelson, Officer Whitlow, Officer Gay, F. Epperson, Rick Malott, Amy McIntosh, and Officer Walder. (Docs. 42, 46). Plaintiff has been ordered to show cause why the complaint should not be dismissed for lack of service as to defendants Dr. Carlson, Mona Parks, Brenda Tilton, M. Westall, R. Wingate, and George D. Crutchfield. (Doc. 93).

plaintiff's motion to strike defendants' reply in support of motion to dismiss (Doc. 91); and (8) plaintiff's second motion to strike defendants' reply memorandum and to strike defendants' memorandum in opposition to plaintiff's motion to strike (Doc. 98).

## I. Background

Plaintiff filed the original complaint in this action on October 4, 2015, and a motion for leave to proceed *in forma pauperis* on November 9, 2015. (Docs. 1, 3). The District Judge adopted the undersigned's Report and Recommendations which recommended that leave to proceed *in forma pauperis* be denied. (Docs. 5, 11). The District Judge also denied plaintiff's motion to alter or amend the judgment. (Doc. 15). Plaintiff filed a notice of appeal from the Order denying his motion to alter or amend the judgment. (Doc. 17). A Report and Recommendation was issued recommending that the case be dismissed for failure to pay the full filing fee. (Doc. 20). The District Judge stayed her ruling pending a decision on plaintiff's appeal. (Doc. 25). The Court of Appeals issued a decision vacating the District Court's Order and remanded the case for further proceedings on November 30, 2016. (Doc. 26).

Plaintiff thereafter filed a second amended verified complaint in this action on April 10, 2017. (Doc. 35). Plaintiff's complaint named as defendants Gary Mohr, Ernie Moore, J. Schweitzer, Dan Hudson, M. Westall, R. Malott, Officer Walder, Officer Gay, Officer Whitlow, Mona Parks, George Crutchfield, Cynthia Hill, Lt. Nelson, Dr. Eddy, Timothy Heyd, Dr. Carlson, Brenda Tilton, Amy McIntosh, Norm Evans, R. Wingate, F. Epperson, Ohio Department of Rehabilitation and Correction (ODRC) and "Jane/John Does x 100." Plaintiff brought claims under 42 U.S.C. § 1983 alleging that defendants retaliated against him for the exercise of his constitutional rights and seeking declaratory and injunctive relief. On *sua sponte*

review of the second amended complaint under 28 U.S.C. §§ 1915 and 1915A, the Court dismissed plaintiff's claims against the named individual defendants to the extent he sued them in their official capacity for money damages; the claims against the ODRC on the ground it is not a "person" subject to suit or liability under § 1983; and his claims against defendant Mohr because the doctrine of *respondeat superior* does not apply in § 1983 lawsuits to impute liability onto supervisory personnel. (Docs. 36, 64). The Court ordered that service be made on the remaining defendants. (Doc. 36).

The second amended complaint includes the following allegations: Between February 5 and October 8, 2013, defendant Malott intentionally vented dangerous refrigerants into the atmosphere at LCI and did not comply with safe disposal requirements, which put plaintiff, other inmates and staff in imminent danger of death or serious bodily harm. (*Id.*, ¶¶ 44, 46; Exh. A). As a result of Malott's actions, plaintiff suffered permanent eye damage with long-lasting pain and other symptoms which necessitated surgeries, hospitalizations, and vision exams for new eye glasses prescriptions twice in 2013. (*Id.*, ¶¶ 44, 45).

Plaintiff reported violations of the Clean Air Act (CAA) to the EPA administrator in 2013 and requested protective measures from an LeCI case manager in October 2013 to prevent Malott from retaliating against him. (*Id.*, ¶¶ 45, 47). Plaintiff was allegedly subjected to a number of retaliatory measures and was forced to transfer to another facility to prevent further retaliation for reporting the CAA violations and filing an informal complaint against Malott with Schweitzer, which was denied. (*Id.*, ¶¶ 48, 49; Exh. D). For retaliatory reasons, defendants Moore, Schweitzer, Hudson and Westall refused to investigate clear violations of the CAA; Walder threatened plaintiff without provocation for filing the informal complaint; and

Schweitzer approved an order for medically approved size 12eee boots on October 7, 2013, then refused to issue the boots on January 6, 2014. (*Id.*, ¶¶ 49, 50, 51; Exh. B).

Plaintiff alleges he was transferred to WCI in further retaliation on March 10, 2014, after which more acts of retaliation occurred. (*Id.*, ¶ 52). After his transfer, he filed an informal complaint for missing legal and other property, which included an HVAC refrigeration book and legal transcripts. (*Id.*, ¶ 52; Exh. E). On April 11, 2014, plaintiff filed a complaint with the Ohio Court of Claims. Defendants Crutchfield, Hill and Parks then denied him access to the courts for retaliatory reasons by failing to provide appropriate remedies for his valid grievance. (*Id.*). On October 7, 2014, the Court of Claims administratively dismissed his claim and later affirmed the dismissal for retaliatory reasons. (*Id.*, ¶¶ 53, 54). Plaintiff filed two grievances, which were also denied for retaliatory reasons. (*Id.*).

In furtherance of the alleged retaliatory scheme, between May 8, 2014 and August 6, 2015 defendants Heyd, Wingate, Hill, Eddy, Tilton, McIntosh and Evans discontinued or decreased plaintiff's blood pressure medication, eye medications, and allergy medications for periods of time despite continued symptoms; treated him unprofessionally; denied plaintiff had a condition that was subsequently diagnosed; and refused to verify his need for medically approved size 12eee boots so that the mailroom would allow plaintiff to purchase them at his own expense. (*Id.*, ¶¶ 55-70). Defendant Nelson ordered that the boots be returned to the vendor in Crutchfield's presence. (*Id.*, ¶ 70). Further, since January 7, 2013, when he entered the custody of ODRC, plaintiff has been denied treatment for Hepatitis C despite recurring symptoms of weight loss, fatigue, pain in his abdomen on the left side, diarrhea, and abnormal blood test results. (*Id.*, ¶ 71(a)). Further, two birthday cards that his mother had mailed to him in 2015 were returned to her marked "unable to identify inmate" and defendant Nelson denied

approval for plaintiff to order a new CD player in place of one destroyed by LeCI staff in 2013. (*Id.*, ¶ 70; Exh. F).

On July 23, 2015, defendant Epperson retaliated against plaintiff by falsely accusing him of masturbating while in his cell in the presence of a case manager. (*Id.*, ¶ 71(a)). Plaintiff alleges that defendant Wingate made similar accusations regarding the case manager to plaintiff's cellmate some time later in August. Plaintiff alleges that since filing the complaint in this lawsuit, Wingate has harassed and retaliated against plaintiff. In December 2015, Wingate rummaged through the commissary on plaintiff's bunk and came back and turned on the water in the cell sink for a reason he gave that was not logical.

On December 10, 2015, in an attempt to harass plaintiff for filing administrative complaints, defendant Wingate requested that plaintiff report to the RIB. (*Id.*). When plaintiff arrived, defendant Nelson was sitting as the RIB chairman, and two unidentified officers were with him. Nelson handed one of the two a sheet of paper, which was a decision on a complaint filed by plaintiff, and plaintiff was told he was free to go. Nelson stared at plaintiff during this entire process in an attempt to intimidate him.

On December 26, 2015, CO Miller bumped against plaintiff's cell door for the third time in two or three weeks and apparently made a conduct report that she observed plaintiff with his pants pulled half way down and his penis exposed and fully erect. (*Id.*). The report was referred to the RIB for processing. Plaintiff appears to allege there were numerous miscommunications regarding the status of the conduct report and his placement in isolation during the two days following this incident, that these issues were in retaliation for the exercise of his constitutional rights, and that he believed Wingate and Epperson initiated the charge against him with other inmates' assistance. Plaintiff indicates he was found not guilty of the rule infraction and

informed that same day that he was being given a security level reduction and transferred to another facility. Plaintiff complains that the transfer was atypical because it occurred without 48 hours' notice, deprived him of the opportunity to complete his computer classes at WCI, and created an "atypical hardship" for visiting purposes.

Plaintiff also alleges that several John and Jane Doe defendants acted in conjunction with other defendants to retaliate against him. (*Id.*, ¶ 71(b)). He alleges defendants Mohr, Moore, Schweitzer, Hudson and Westall "remained mute and took no corrective active" and "explicitly refused to investigate" violations of the CAA and "Safe Disposal Requirements" by defendant Malott after being put on notice of the violations. (*Id.*, ¶ 71(c)). He further alleges that defendants Walder, Schweitzer, Whitlow and Hudson retaliated against him for exercising his due process rights. (*Id.*, ¶ 71(c)). Plaintiff alleges that defendant Gay failed to act or report Malott's actions, which directly exposed plaintiff to dangerous refrigerants and injured him. (*Id.*, ¶ 71(d)). He alleges defendant Parks failed to investigate constitutional violations by Crutchfield, Hill, Nelson, Heyd, Tilton, Carlton, Eddy, McIntosh and Evans after being placed on notice of them. (*Id.*, ¶ 71(e)). He alleges defendants Heyd, Tilton, Eddy, Carlton, McIntosh, Wingate, and Epperson worked in conjunction with each defendant to further the retaliatory agenda/harassment campaign of other defendants for the filing of non-frivolous grievances. (*Id.*, ¶ 71(e)).

Plaintiff alleges violations of his right to due process, his right to be free from race and other forms of discrimination, and his Eighth Amendment rights, and he alleges he was retaliated against for using the prison grievance procedure and reporting violations of the CAA and EPA standards. (¶¶ 73, 74). Plaintiff also alleges violations of Ohio law. He seeks declaratory relief, a preliminary injunction, nominal damages, and punitive damages.

## II. Plaintiff's pending motions to supplement the second amended complaint (Docs. 43, 48)

### 1. Proposed supplemental complaints

Plaintiff has filed two motions for leave to supplement the second amended complaint under Fed. R. Civ. P. 15(d). He filed the first motion on June 26, 2017. (Doc. 43). Plaintiff alleges that the proposed supplement sets forth additional transactions, occurrences or events that have occurred since the date of the second amended complaint. Plaintiff alleges that individuals named in this lawsuit pursued a retaliatory agenda or campaign of harassment that continued after he was transferred to London Correctional Institution (LOCI). Plaintiff alleges the first act of retaliation occurred in October 2016 when Unit Manager Lori Peterman "refused plaintiff a legal call to [a] case manager" in the Court of Appeals to inquire about this case. (*Id.* at 2). Plaintiff alleges that Peterman told him, "Gary Mohr is my supervisor, he pays my bills," and when plaintiff stated he did not understand, she yelled at him, "That's because you don't give a fuck." (*Id.* at 5).

Second, plaintiff alleges that Peterman retaliated against him on April 20, 2017 when Captain Richardson sent him to her office so that plaintiff could request a bedside visit for his dying mother. (*Id.* at 6-7). Plaintiff alleges that Peterman told him three times to leave and return, and when plaintiff reached his daughter at his mother's room 90 minutes later she had died. Plaintiff alleges that after he started to cry, Peterman told him he could go into the "quiet room" for a while if he needed time, but plaintiff declined and left abruptly since the quiet room was Peterman's bathroom and no other staff members were present. Plaintiff alleges he conveyed this information in a letter to his daughter dated June 16, 2017 and in emails to her.

Third, plaintiff alleges he was "targeted with an erroneous conduct report" for a Rule 14 violation by Officer Tiffany Salyers. (*Id.* at 2). Plaintiff alleges that Salyers formerly worked as

a nurse in Inmate Health Services and he has litigation pending against Inmate Health Services and OSU Medical Center for medical malpractice and negligence. (*Id*. at 8). Salyers wrote a conduct report on June 5, 2017, charging plaintiff with a Rule 14 violation for masturbating while watching her as she worked at her desk. (*Id*. at 3; Attachment, p. 22). Plaintiff alleges that Peterman directed Salyers to "write the ticket" while escorting plaintiff to the captain's office. (*Id*. at 7). Plaintiff contends that Peterman investigated the charge and wrote an allegedly erroneous conduct report the following day charging him with a Rule 59 violation for "stalking females" based on the conduct reported by Salyers and other inmates who reported they saw plaintiff masturbating in the restroom on that date. (*Id*., Attachment, p. 24). Plaintiff alleges that on June 6, 2017, he reported Salyers and Peterman for sexual misconduct and retaliation "to Prison Rape Elimination Act" via a hotline and a website and instructed his wife to do the same. (*Id*. at 2).

Plaintiff alleges he was denied his due process right to present documentary evidence in his defense at the RIB hearing. (*Id*. at 3). Instead, plaintiff alleges RIB chair Lt. Kyle Webb and hearing officer Sgt. Combs told him prior to the hearing that he would be found guilty no matter what documents he had and he was denied the presence of "both writing officials." (*Id*. at 3-4). Plaintiff alleges that Peterman's written testimony discloses that when she entered the inmate bathroom, plaintiff was properly dressed and was not doing anything inappropriate. (*Id*. at 4-5). Plaintiff was found guilty of both violations and received 7 days LPH (Limited Privilege Housing), 6 days credit, and a recommendation for a security level increase with LPH to be increased to 90 days if the recommendation was denied. (*Id*. at 4). Plaintiff was informed by Sgt. Baker that his appeal to Warden Jeffrey Noble was denied. (*Id*.). Plaintiff alleges that numerous other inmates, most of whom are white, have not been punished in a similar manner.

(*Id*. at 14). Plaintiff alleges that in addition to being retaliated against by Salyers and Peterman through the filing of conduct reports, he has been retaliated against by being restricted to two hours of recreation daily "per Vicki Justus-CWA" and the cell air conditioning had not been on during 80 to 90 degree weather. (*Id*. at 13).

Plaintiff filed his second motion to supplement the second amended complaint under Fed. R. Civ. P. 15(d) on July 20, 2017. (Doc. 48). Plaintiff appears to allege two series of retaliatory actions, the first of which is related to an RIB conviction in June 2017 which led to plaintiff's transfer to SOCF. Plaintiff alleges that Mohr and "Chief BOC" Brian Wittrup, acting in concert with employees of the LOCI, furthered a retaliatory agenda or campaign of harassment. Plaintiff alleges Mohr, Wittrup and LOCI Staff Warden Noble, Unit Manager/Administrator Russell Parrish, Peterman, and Case Manager Casey Brann failed to act, implicitly authorized, approved or knowingly acquiesced in the affirmance of a June 19, 2017 RIB decision and the improper increase of plaintiff's security level without justification. (*Id*. at 2). Plaintiff alleges that he was interviewed by John/Jane Doe defendant and Investigators Crissler and Westall on June 29, 2017, who threatened plaintiff in order to dissuade him from seeking resolution of complaints of retaliation and sexual misconduct against Peterman and Salyers filed by plaintiff three weeks earlier and complaints of other constitutional violations by Jane/John Doe defendants. (*Id*. at 2-3; Attached letter).

Second, plaintiff alleges that after he filed objections to the Magistrate Judge's Reports and Recommendations and the First Supplemental Complaint, he was denied freedom of movement and access to the law library, and his legal materials for this lawsuit and other lawsuits were withheld. (*Id*., Attachments 5, 6, 7, 8, 9). Plaintiff alleges he was retaliated against by being transferred from LOCI to SOCF and denied access to the law library and legal

9

materials there so that he would not seek redress for grievances related to alleged constitutional violations by John/Jane Doe defendants.

As relief, plaintiff seeks a preliminary and permanent injunction ordering Mohr and the John/Jane Does to: 1) perform an emergency security review by the "BOCR Chief" to restore plaintiff to a level 2A facility and transfer plaintiff to such facility; (2) strictly comply with ODRC policy relating to the criteria for plaintiff's placement and the recommendation for the security level increase; (3) conduct a review of the RIB decision issued on June 9, 2017, including the evidence of plaintiff's medical conditions and his medications for treating those conditions. (*Id*. at 5). He also seeks an order requiring SOCF administrators to return all of his legal documents that have been withheld since July 11, 2017.

Defendants Hill, Eddy, Evans, Hyde, Nelson, Whitlow, McIntosh, Epperson, Malott, Walder, Gay, Moore, Schweitzer and Hudson have a filed a memorandum opposing plaintiff's second motion for leave to supplement the second amended complaint. (Doc. 61). Defendants argue that plaintiff has made only conclusory, implausible allegations of retaliatory motive unsupported by material facts; the proposed amendment would constitute a "buckshot" complaint in violation of Fed. R. Civ. P. 20; and the proposed amendment would be futile because he has failed to state an Eighth Amendment claim. Defendants assert that because the proposed supplement involves individuals who plaintiff has not previously mentioned in this litigation, with the exception of dismissed defendant ODRC Director Mohr, plaintiff should be required to file a separate lawsuit to pursue his unrelated claims.

In reply, plaintiff alleges that the proposed supplements set forth facts that are sufficient to state a claim to relief under § 1983. (Doc. 86). Plaintiff alleges he engaged in constitutionally protected conduct, the speech was a motivating factor for defendants' actions, and there is a

causal connection between his protected speech/conduct and the adverse actions.

## 2. Leave to supplement the complaint should be denied

Supplementation of a complaint is governed by Fed. R. Civ. P. 15, which states in part:

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense.

Fed. R. Civ. P. 15(d). Whether to grant or deny a request to supplement a pleading is left to the sound discretion of the trial court. *Burse v. Robinson*, No. 2:14-cv-403, 2015 WL 2337781, *2 (S.D. Ohio May 13, 2015) (King, M.J.) (citations omitted). In exercising its discretion under Rule 15(d), the Court considers "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." *Id.* (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962); *Spies v. Voinovich,* 48 F. App'x 520, 527 (6th Cir. 2002) (same standard of review and rationale apply to motions filed under Fed. R. Civ. P. 15(a) and 15(d)). A proposed amendment is futile if it could not withstand a Rule 12(b)(6) motion to dismiss. *Rose v. Hartford Underwriters Ins. Co.,* 203 F.3d 417, 420 (6th Cir. 2000).

Proposed amendments and supplements to a prisoner's complaint must be *sua sponte* reviewed under 28 U.S.C. §§ 1915 and 1915A. Courts have generally held that "[u]nrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees -for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees."

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (citing 28 U.S.C. § 1915(g)). *See also Hetep v. Warren*, 27 F. App'x 308, 309 (6th Cir. 2001) (citation omitted) (proposed amendment adding new unrelated claims against new defendants not allowed).

By his motions to supplement the complaint, plaintiff seeks to add new claims against different defendants arising out of different incidents than those addressed in the second amended complaint, which is the operative complaint. Plaintiff's second amended complaint asserts Eighth Amendment claims against defendants related to events that allegedly occurred at LeCI between February 2013 and January 2014 and then at WCI after his transfer there in March 2014 and continuing until January 2015. (Doc. 35). These claims arise out of a course of conduct that defendant Malott allegedly engaged in from February to October 2013, during which he allegedly endangered plaintiff's health and life and caused permanent injury by exposing him to dangerous refrigerants and failing to safely dispose of those refrigerants. (*Id.*, ¶¶ 44, 45, 46; Exh. A). Plaintiff alleges that the individuals named as defendants in the second amended complaint engaged in a campaign of retaliation and harassment against him for reporting the CAA violations and filing an informal complaint against Malott with defendant Schweitzer, and that their acts of retaliation included refusing to investigate violations of the CAA, threatening plaintiff, and refusing to issue an order for his medically approved boots. (*Id.*, ¶¶ 48, 49, 50, 51; Exhs. B, D). Plaintiff alleges that following his transfer to WCI in March 2014, individuals on staff there repeatedly retaliated against him by denying him access to the courts; denying his grievances for retaliatory reasons; falsely accusing him of masturbating or issuing false conduct reports for masturbating; returning personal mail addressed to him to the sender; denying him medical treatment or treating him unprofessionally; refusing to replace his destroyed CD player; giving him a security level reduction and transferring him to another

12

facility without adequate notice; and failing to investigate other defendants' retaliatory actions. (*Id.*, ¶¶ 52, 53, 55-70, 71(a)-(e); Exhs. E, F).

Plaintiff's proposed supplements to the complaint filed on June 26, 2017 (Doc. 43) and July 20, 2017 (Doc. 48) do not involve the same incidents that are alleged in the second amended complaint and the incidents alleged in each do not appear to be connected in any other manner. Plaintiff alleges in the proposed supplement filed in June 2017 that staff members at LOCI continued the alleged retaliatory agenda or campaign of harassment that began at LeCI in 2013. (Doc. 43). Plaintiff alleges that LOCI staff members Peterman, Salyers, Webb, Combs, Baker, Justus and Noble retaliated against him by refusing to allow him to place a call to the Court of Appeals on one occasion, drafting erroneous conduct reports and charges against him for masturbating while observing female employees in June 2017, denying his due process rights at the RIB hearing, disciplining him more harshly than white inmates for rule violations, restricting him to two hours of recreation, and not turning the air conditioning on in the cells during hot weather. In the second proposed supplement to the complaint filed in July 2017, plaintiff alleges additional retaliatory actions by employees at LOCI acting in concert with Mohr and Wittrup. (Doc. 48). Those actions relate to plaintiff's RIB conviction in June 2017, which led to an increase in his security level and his transfer to SOCF. Plaintiff alleges that previously named individuals and newly-named LOCI staff members Parrish and Brann and Investigator Crissler acquiesced in or affirmed the decision or threatened plaintiff to dissuade him from seeking resolution of his complaints against LOCI employees. Plaintiff also alleges that individuals at LOCI retaliated against him for filing objections to rulings in this lawsuit and sought to prevent him from seeking redress for other alleged constitutional violations by restricting his movement,

his access to the law library, and his access to legal materials and by transferring him from LOCI to SOCF.

It is clear when the allegations of the second amended complaint and the proposed supplements are compared that they do not involve the same incidents, the same time frames, the same prisons, or the same defendants. Nor do the proposed supplements include factual allegations to show that the subsequent transactions, acts and omissions alleged in the proposed supplements have any connections to the incidents set forth in the second amended complaint. *See George*, 507 F.3d at 607; *Hetep*, 27 F. App'x at 309. Plaintiff's unrelated claims are properly addressed in a separately filed new civil rights complaint and not in a supplemental complaint filed in this action. Accordingly, plaintiff's motions to supplement his complaint (Docs. 43, 48) to add claims for retaliation that occurred at LOCI or elsewhere subsequent to the transactions and occurrences set forth in the second amended complaint related to defendants at LeCI and WCI should be denied.

## II. Plaintiff's motion for injunctive relief (Doc. 67)

Plaintiff has filed a motion for injunctive restating the incidents alleged in the proposed supplements, which he claims were in retaliation for the constitutionally protected activity of filing documents in this case and grievances. (Doc. 67). In support of his request for injunctive relief, plaintiff simply alleges in one brief sentence that the circumstances of this case require injunctive relief, even at the preliminary stage. (*Id*. at 18). Defendants oppose plaintiff's request for injunctive relief. (Doc. 76). They object that plaintiff is attempting to obtain the extraordinary remedy of injunctive relief against individuals who are not parties to the lawsuit, and they incorporate their response in opposition to plaintiff's motion for leave to file a second supplemental complaint (Doc. 61).

Fed. R. Civ. P. 65 permits a party to a lawsuit to seek injunctive relief if he believes that he will suffer irreparable harm or injury while the suit is pending. In determining whether to issue a preliminary injunction, this Court must balance the following factors:

1. Whether the party seeking the injunction has shown a "strong" likelihood of success on the merits;

2. Whether the party seeking the injunction will suffer irreparable harm absent the injunction;

3. Whether an injunction will cause others to suffer substantial harm; and

4. Whether the public interest would be served by a preliminary injunction.

*Leary v. Daeschner,* 228 F.3d 729, 736 (6th Cir. 2000); *Overstreet v. Lexington-Fayette Urban Cty. Gov.*, 305 F.3d 566, 573 (6th Cir. 2002). A preliminary injunction is an extraordinary remedy that should only be granted if the movant carries his burden of proving that the circumstances clearly demand it. *Leary*, 228 F.3d at 739; *Overstreet*, 305 F.3d at 573. Where a prisoner requests an order enjoining a state prison official, the Court must proceed with caution and due deference to the unique nature of the prison setting. *White v. Corr. Med. Servs.*, No. 1:08-cv-277, 2009 WL 529082, *2 (W.D. Mich. Mar. 2, 2009) (citing *Kendrick v. Bland*, 740 F.2d 432, 438 n.3 (6th Cir. 1984); *Ward v. Dyke*, 58 F.3d 271, 273 (6th Cir. 1995)).

A motion for preliminary injunctive relief is not the proper method for plaintiff "to use in an attempt to address other issues unrelated to his original complaint." *Hendricks v. Hazzard*, No. 2:11-cv-399, 2013 WL 2635729, *3 (S.D. Ohio June 12, 2013) (Report and Recommendation) (Kemp, M.J.), *adopted,* 2013 WL 5944082, at *4 (S.D. Ohio Nov. 5, 2013) (Watson, J). A party who seeks a preliminary injunction must show a relationship between the irreparable injury he alleges in the motion and the claims in the complaint that are pending before the Court. *Id.* (citing *Colvin v. Caruso*, 605 F.3d 282, 298 (6th Cir. 2010)). A

preliminary injunction is not the means by which a plaintiff who is before the Court on one claim can "seek redress for all other conditions of confinement that he finds actionable." *Id.* (citing *Arrington v. Scott*, No. 12-cv-529, 2013 WL 1080298 (W.D. Mich. Jan. 7, 2013)).

Plaintiff is not entitled to a preliminary injunction. He has made no attempt to apply the above factors that must be weighed to his situation. He has not presented any evidence either showing a substantial likelihood of success on the merits of his constitutional claims or demonstrating that he will suffer irreparable harm absent a preliminary injunction. Plaintiff's allegations in his motion are unrelated to the merits of the claims presented in the second amended complaint that have survived initial screening. Plaintiff cannot seek redress through a motion for preliminary injunction for acts and omissions that have no connection to the claims pending before the Court. A preliminary injunction is also not warranted here because the purpose of a preliminary injunction - to preserve the status quo until a trial on the merits can be held, *see S. Milk Sales, Inc. v. Martin*, 924 F.2d 98, 102 (6th Cir. 1991) - would not be served. Plaintiff does not seek to preserve the status quo; instead, he seeks to affirmatively correct alleged constitutional harms inflicted on him by prison officials and other parties who are not defendants in this case and over whom the Court has no jurisdiction.

Accordingly, plaintiff's request for a preliminary injunction (Doc. 67) should be denied.

### III. Plaintiff's requests for appointment of counsel (Docs. 48, 67)

Plaintiff moves the Court to appoint counsel to represent him in his motion to supplement filed on July 20, 2017 (Doc. 48) and in the motion he filed on August 29, 2017 (Doc. 67). Plaintiff filed a prior motion to appoint counsel in this case (Doc. 27), which the Court denied by Order dated February 6, 2017 (Doc. 30). Plaintiff acknowledges that the Court previously denied his request for appointment of counsel. (Doc. 86). However, he argues that extraordinary

circumstances justify the appointment of counsel because the case is complex, he is not competent to litigate it on his own, the documentary evidence spans four years, and questions as to the adequacy of the medical treatment he received will likely require expert testimony. Plaintiff asserts that his inability to serve several of the named defendants with process illustrates his inability to litigate this matter himself. He also alleges he faces an imminent threat of serious physical harm.

Plaintiff has not alleged any new and exceptional circumstances that show the appointment of counsel is warranted in this case. The Court has recommended that plaintiff's claims be limited to those presented in the second amended complaint rather than expanded to cover a four-year period, and expert testimony is not required at this stage of the litigation. Further, plaintiff has not introduced evidence that indicates he faces a threat of imminent physical danger related to the claims asserted in this lawsuit. Thus, in accordance with the law set forth in the prior Order, plaintiff's motions for appointment of counsel are denied.

## IV. Plaintiff's motion for service on defendant Gary Mohr (Doc. 67)

Plaintiff requests that defendant Gary Mohr, who was dismissed as a defendant from the second amended complaint, be properly served. (Doc. 67). Plaintiff alleges that Mohr has implicitly authorized, approved or knowingly acquiesced in the unconstitutional activity of his subordinates as set forth in the second amended complaint and the proposed supplements. (*Id.* at 18). Defendants oppose plaintiff's motion on the ground Mohr was dismissed from the lawsuit during the initial screening. (Doc. 76).

Plaintiff's motion that Mohr be served should be denied. As stated earlier, the Court dismissed Mohr from this lawsuit on initial screening of the second amended complaint because the doctrine of *respondeat superior* does not apply in § 1983 lawsuits to impute liability onto

supervisory personnel. (Docs. 36, 64). Because Mohr is no longer a party to the lawsuit, service of summons on him is not warranted.

## V. Plaintiff's motion for documentation (Doc. 74)

Plaintiff requests free copies of documents that he filed with the Court in August 2017, a free copy of a current docket sheet, and a free copy of the "second supplemental complaint." (Doc. 74). Plaintiff alleges he is unable to access the internet to download free documents and he notes he is proceeding *in forma pauperis*.

Plaintiff previously filed a request for free copies on August 4, 2017. (Doc. 52). The Court denied plaintiff's request for the following reasons:

> Plaintiff does not have a right to free copies and he has not shown that he will be prejudiced if his request is denied. An indigent plaintiff does not have the statutory right to receive copies of court documents without payment. *See Douglas v. Green*, 327 F.2d 661, 662 (6th Cir. 1964) (stating that 28 U.S.C. § 1915 does not include the right to obtain copies of court documents and denying the plaintiff's request for copies of papers he sent to the court in the absence of a showing of the need for such copies). Further, there is no constitutional requirement that an indigent prisoner be provided with free copies. *Thomas v. Croft*, No. 2:10-cv-74, 2010 WL 1629628, at *4 (S.D. Ohio Apr. 21, 2010) (citing *Fazzini v. Gluch*, 875 F.2d 863 (table), 1989 WL 54125, at *2 (6th Cir. May 23, 1989) (the right of access to courts is not infringed where access to a law library or to the assistance of legally trained personnel is provided); *Dugar v. Coughlin*, 613 F. Supp. 849, 854 (S.D.N.Y. 1985) (charging a reasonable amount for copying does not infringe the right of access to courts)).

(Doc. 87). These same reasons apply to plaintiff's most recent request for free copies. Accordingly, plaintiff's motion for documentation (Doc. 74) is denied.

## VI. Plaintiff's motion for relief from filing fee (Doc. 90)

Plaintiff seeks relief from the obligation to pay the full filing fee in accordance with 28 U.S.C. § 1915(b) in connection with his appeal from this Court's August 30, 2017 Order.[2] (Doc.

---

[2] The August 30, 2017 Order (Doc. 69) denied plaintiff's motion to alter or amend the Court's judgment issued on August 18, 2017 (Doc. 64), which adopted the Report and Recommendation of the undersigned recommending

90). Plaintiff alleges the issues presented were never briefed on appeal because the Court of Appeals did not have jurisdiction to hear those issues and dismissed the appeal; therefore, the "deductions for appeal are moot." (*Id.*).

Plaintiff filed objections to the undersigned's Order granting him *in forma pauperis* status on appeal and ordering the collection of the full filing fee (*see* Doc. 83) for the same reasons he asserts in his motion. (Doc. 89). The District Judge denied plaintiff's objections on November 29, 2017. (Doc. 92). There is no reason to revisit plaintiff's objections to the deductions. The obligation to pay the full filing fee under § 1915(b) arises at the time a civil complaint or appeal is filed. *McGore v. Wrigglesworth,* 114 F.3d 601, 607 (6th Cir. 1997) (*overruled on other gds. by LaFountain v. Harry,* 716 F.3d 944, 951 (6th Cir. 2013)). Any subsequent dismissal of the prisoner's complaint or appeal does not negate this financial responsibility. *Id.*; *In re Alea,* 286 F.3d 378, 381-82 (6th Cir. 2002). *See also Watley v. Carter*, No. 1:00-cv-928, 2013 WL 3455816, *1 (S.D. Ohio July 9, 2013) (Report and Recommendation) (Bowman, M.J.), *adopted*, 2013 WL 3934340 (S.D. Ohio July 30, 2013) (Beckwith, J.) (plaintiff denied relief from obligation to pay full filing fee under § 1915(b) where case had been dismissed); *Blair v. Thompson*, No. 5:16-cv-P35-TBR, 2017 WL 525496, *3 (W.D. Ky. Feb. 7, 2017), *appeal dismissed,* No. 17-5184, 2017 WL 3613303 (6th Cir. July 11, 2017) ("there is no provision in the PLRA for the return of the filing fee or for cancellation of any unpaid portion of the fee").

Plaintiff's motion for relief from his obligation to pay the full filing fee on appeal (Doc. 90) is denied.

---

dismissal of plaintiff's claims against defendants Mohr, the ODRC, and the individual defendants to the extent they were sued in their official capacity for money damages (Doc. 36).

## VII. Plaintiff's motion to strike defendants' memoranda (Docs. 91, 98)

Plaintiff moves the Court to strike defendants' reply in support of their motion to dismiss. (Doc. 91). Although plaintiff's motion to strike is difficult to decipher, plaintiff appears to primarily address the merits of defendants' motion to dismiss. Plaintiff appears to argue that his assertions in the motion to dismiss negate defendants' arguments, defendants filed a second reply in support of their motion to dismiss (Doc. 56) without leave of Court, and the reply presents a defense not raised in the original motion.

In response, defendants argue that plaintiff's motion is actually a sur-reply that plaintiff improperly filed without leave of Court in violation of the Local Rules. (Doc. 94, citing S.D. Ohio Civ. R. 7.2(a)(2) ("No additional memoranda beyond those enumerated (a memorandum in support of a motion, an opposing memorandum, and a reply memorandum) are permitted except upon leave of court for good cause shown."). Defendants correctly note that they filed one reply in support of their motion to dismiss (Doc. 88), which complies with Local Rule 7.2(a)(2).

Plaintiff has filed a second motion to strike defendants' reply in support of their motion to dismiss and to strike their response in opposition to plaintiff's motion to strike. (Doc. 98). Plaintiff argues that defendants did not obtain leave of Court to file the memoranda.

Plaintiff has not presented a valid reason to strike defendants' reply memorandum or their response in opposition to plaintiff's motion to strike. Defendants' memoranda are permissible filings under the Local Rules and leave of Court to file these particular memoranda is not required. The Court therefore denies plaintiff's motions.[3]

---

[3] The Court declines to strike plaintiff's first motion (Doc. 91) as defendants have requested but will not further consider the allegations in the motion.

## VIII. Plaintiff's failure to serve defendants

As of December 1, 2017, defendants Carlson, Parks, Tilton, Westall, Wingate, and Crutchfield had not been served with summons and the complaint. The Court therefore issued an Order notifying plaintiff that it proposed to dismiss this action without prejudice as to these defendants and ordering plaintiff to either serve the defendants within 20 days or show cause why service could not be effected within that time period. (Doc. 93). The Court informed plaintiff that failure to comply with the terms of the Order would result in a Report and Recommendation to the District Judge that plaintiff's claims against these defendants be dismissed for lack of service under Fed. R. Civ. P. 4(m). Plaintiff responded to the Order to show cause by requesting additional time to serve these defendants. (Doc. 95). Plaintiff alleges he is unable to litigate this case without the assistance of counsel and he asks the Court to extend the time to serve the remaining unserved defendants until counsel is appointed in this case.

Plaintiff has not shown good cause for failure to serve defendants Carlson, Parks, Tilton, Westall, Wingate, and Crutchfield with summons and the complaint. Plaintiff filed the second amended complaint on April 10, 2017. (Doc. 35). Summons were issued for each of the defendants on May 23, 2017. (Doc. 37). Summons were returned unexecuted for defendants Carlson, Parks, Tilton, Westall, Wingate, and Crutchfield[4] on July 20, 2017. (Doc. 47). There is no indication that plaintiff has made any attempt to serve these defendants since that time. Although plaintiff alleges he requires the assistance of counsel to effectuate service, plaintiff has been able to serve other defendants in this case, pursue a successful appeal, and prepare and file 25 documents since filing the second amended complaint. Plaintiff has had ample opportunity to

---

[4] Summons were originally returned executed for defendant Crutchfield. (Doc. 42). The ODRC subsequently sent a letter to the Court dated July 28, 2017, explaining that mailroom staff accepted the mail addressed to Crutchfield in error and the packet was returned to the United States Marshals Service when the mailroom discovered that Crutchfield no longer works for the ODRC. (Doc. 51).

serve defendants Carlson, Parks, Tilton, Westall, Wingate, and Crutchfield and has not shown good cause for failing to take any action to prosecute his case against them. Plaintiff's complaint against these defendants should therefore be dismissed for lack of service. *See O.J. Distrib., Inc. v. Hornell Brewing Co., Inc.*, 340 F.3d 345, 353 (6th Cir. 2003) (proper service of process is required in order for the Court to obtain personal jurisdiction over each defendant).

## IX. Temporary stay of this case

The Court finds that a temporary stay of this case is warranted pending resolution of defendants' motion to dismiss. (Doc. 56). The second amended complaint has been pending for over eight months and plaintiff has filed more than a dozen motions since that time, including three motions to strike and two motions to alter or amend the Court's judgments. This Order addresses eight motions filed by plaintiff. The motion to dismiss filed by 14 defendants named in plaintiff's complaint remains pending. (Doc. 56). The motion has been fully briefed and is ripe for disposition. (Docs. 81, 88). The Court will therefore stay this case pending resolution of the motion to dismiss, except that the parties are permitted to file objections and responses to this Order and Report and Recommendation.

## IT IS THEREFORE RECOMMENDED THAT:

(1) Plaintiff's motion to supplement the complaint pursuant to Fed. R. Civ. P. 15(d) (Doc. 43) be **DENIED**.

(2) Plaintiff's motion for leave to supplement the second amended complaint under Fed. R. Civ. P. 15(d) (Doc. 48) be **DENIED**.

(3) Plaintiff's motion for service on Gary Mohr and for preliminary injunction (Doc. 67) be **DENIED**.

(4) Plaintiff's complaint against defendants Dr. Carlson, Mona Parks, Brenda Tilton, M. Westall, R. Wingate, and George D. Crutchfield be **DISMISSED** without prejudice for failure of service.

**IT IS THEREFORE ORDERED THAT:**

(1) Plaintiff's motion for documentation (Doc. 74) is **DENIED**.

(2) Plaintiff's motion for an extension of time to file an opposing memorandum and reply memoranda (Doc. 75) is **DENIED** as moot.

(3) Plaintiff's motion to strike the Order granting him leave to proceed *in forma pauperis* on appeal (Doc. 90) is **DENIED**.

(4) Plaintiff's motions to strike defendants' memoranda (Docs. 91, 98) are **DENIED**.

(5) Plaintiff's motions for appointment of counsel (Doc. 48, 67) are **DENIED**.

(6) This case is **STAYED** pending further Order of the Court. No party shall file any document without a showing of good cause and the Court's prior approval, with the exception of objections and responses to this Order and Report and Recommendation. No discovery shall be conducted during the stay. The Court will establish a trial calendar after the pending motion to dismiss is resolved, if necessary. No request for reconsideration of this Order entering a stay will be entertained.

Date: 1/3/18

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

BRIAN K. ALFORD,
    Plaintiff,

vs.

GARY MOHR, et al.,
    Defendants.

Case No. 1:15-cv-645

Dlott, J.

Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).