# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

BRIAN K. ALFORD,
    Plaintiff,

vs.

GARY MOHR, et al.,
    Defendants.

Case No. 1:15-cv-645
Dlott, J.
Litkovitz, M.J.

**ORDER AND REPORT
AND RECOMMENDATION**

    Plaintiff Brian K. Alford, an inmate currently incarcerated at the Toledo Correctional Institution, brings this action alleging violations of his civil rights by multiple defendants during his prior incarcerations at the Lebanon Correctional Institution (LeCI) and Warren Correctional Institution (WCI). This matter is before the Court on the following motions: (1) motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim to relief filed by defendants Ernie Moore, J. Schweitzer, Dan Hudson, R. Malott, Officer Walder, Officer Gay, Officer Whitlow, Cynthia Hill, Lt. Nelson, Dr. Eddy, Timothy Heyd, Amy McIntosh, Norm Evans, and F. Epperson (Doc. 56), plaintiff's response in opposition to the motion (Doc. 81), and defendants' reply in support of the motion (Doc. 88); (2) plaintiff's motion for an extension of time to serve defendants Dr. Carlson, Mona Parks, Brenda Tilton, M. Westall, George D. Crutchfield and the remaining individuals named as defendants in plaintiff's supplemental and second supplemental complaints (Doc. 95); (3) plaintiff's motion for the District Judge to recuse herself from this case (Doc. 101); and (4) plaintiff's third motion for leave to supplement the amended complaint under Fed. R. Civ. P. 15(d) (Doc. 104).

## I. Background

    Plaintiff filed the original complaint in this action on October 4, 2015, and a motion for

leave to proceed *in forma pauperis* on November 9, 2015. (Docs. 1, 3). After the Court of Appeals vacated the District Court's decision denying plaintiff leave to proceed *in forma pauperis* and remanded the case for further proceedings (Doc. 26), plaintiff filed a second amended verified complaint on April 10, 2017. (Doc. 35). Plaintiff brought claims under 42 U.S.C. § 1983 against the Ohio Department of Rehabilitation and Correction (ODRC); Gary Mohr, the director of the ODRC; Ernie Moore, the warden of LeCI; J. Schweitzer, the deputy warden of LeCI; Dan Hudson, Institutional Inspector at LeCI; M. Westall, the supervisor of maintenance at LeCI; R. Malott, the supervisor of the "Heating Ventilation and Refrigeration Department" at LeCI; LeCI Correctional Officers Walder, Gay, and Whitlow; Mona Parks, R.N. and ODRC Assistant Chief Inspector; George Crutchfield, warden of WCI; Cynthia Hill; Lt. Nelson; Dr. Eddy; Dr. Timothy Heyd, a doctor at WCI; Dr. Carlson, a podiatrist at WCI; Brenda Tilton, a nurse practitioner at WCI; Amy McIntosh, the hospital administrator at WCI; Norm Evans, the assistant hospital administrator at WCI; WCI Correctional Officers R. Wingate and F. Epperson; and "Jane/John Does x 100." (*Id.*, ¶¶ 8-29). On *sua sponte* review of the second amended complaint under 28 U.S.C. §§ 1915 and 1915A, the Court dismissed plaintiff's claims against the named individual defendants to the extent he sued them in their official capacity for money damages; the claims against the ODRC on the ground it is not a "person" subject to suit or liability under § 1983; and his claims against defendant Mohr because the doctrine of respondeat superior does not apply in § 1983 lawsuits to impute liability onto supervisory personnel. (Docs. 36, 64). The Court ordered that service be made on the remaining defendants. (Doc. 36).

## II. Allegations of the second amended complaint (Doc. 35)

Plaintiff makes the following factual allegations in the second amended complaint: From February 5 to October 8, 2013, plaintiff worked in the HVAC apprenticeship program at LeCI. (Doc. 35, ¶ 42). Throughout that time frame, defendant Malott intentionally vented dangerous refrigerants into the atmosphere, putting plaintiff, other inmates and staff's lives in imminent danger of death or serious bodily harm. (*Id.*, ¶ 44). Malott never used recovery equipment or recovery cylinders to meet safe disposal requirements before disposing of or repairing refrigeration equipment, and upon information and belief, the recovery machine in the refrigeration department was inoperable during this time period. (*Id.*, ¶ 46; Exh. A).[1] As a result of Malott's actions, plaintiff suffered permanent damage to his eyes and required two surgeries and three hospitalizations; his vision in his left eye is "still very bad," he suffers constant pain and pressure with "a flashing pulse," and he experiences extreme dryness; and since the first surgery to repair a retinal tear in his left eye, he has the feeling that something is in the eye due to a corneal scar. (*Id.*, ¶ 44). His vision changed twice in 2013, requiring eye exams for new eyeglass prescriptions. (*Id.*, ¶ 45).

Plaintiff reported violations of the Clean Air Act (CAA) to the EPA administrator in early October 2013 and requested protective measures from an LeCI case manager on October 8, 2013 to prevent Malott from retaliating against him. (*Id.*, ¶¶ 45, 47). Plaintiff was subjected to a number of retaliatory measures and was forced to transfer to another facility to prevent further retaliation for reporting the CAA violations and filing an informal complaint against Malott with

---

[1] There are no exhibits attached to plaintiff's second amended complaint. However, the exhibits plaintiff references in his second amended complaint are attached to his original complaint. Because the exhibits are incorporated by reference into the second amended complaint and were filed with the original complaint, they are properly considered part of the second amended complaint. *See Commercial Money Center, Inc. v. Illinois Union Ins. Co.* 508 F. 3d 327, 335 (6th Cir. 2007) (a document attached to the pleadings becomes part of the pleadings and may be considered in connection with a motion to dismiss).

Schweitzer on October 17, 2013, which was denied. (*Id.*, ¶¶ 48, 49; Exh. D). Defendants Moore, Schweitzer, Hudson and Westall refused to investigate clear violations of the CAA for retaliatory reasons. (*Id.*, ¶ 49). Defendant Walder threatened plaintiff without provocation for filing the informal complaint against Malott. (*Id.*, ¶ 50; Exh. B).

In further retaliation, on March 10, 2014, plaintiff was transferred to WCI but one HVAC refrigeration book and 1,654 pages of legal transcripts did not arrive with his property. (*Id.*, ¶ 52; Exh. E). He filed an informal complaint regarding the missing property. (*Id.*). On April 11, 2014, plaintiff filed a complaint with the Ohio Court of Claims. (*Id.*). In furtherance of their retaliatory agenda, plaintiff was sent to defendant Hill's office on Crutchfield's recommendation. Hill advised plaintiff there was nothing further she could do regarding the loss/destruction of plaintiff's property even though she allegedly was required by Ohio Admin. Code 5120-9-31(L) to provide an appropriate remedy for his grievance. Defendants Crutchfield, Hill and Parks denied plaintiff access to the courts for retaliatory reasons by failing to provide appropriate remedies for his valid grievance. On October 7, 2014, the Court of Claims administratively dismissed his claim and later affirmed the dismissal. (*Id.*, ¶¶ 53, 54). Plaintiff filed two grievances on October 20, 2014 and January 15, 2015. (*Id.*). Hill returned the first one without responding to it "pursuant to Ohio Admin. Code 5120-9-32(C)" and the second one was denied for retaliatory reasons and subsequently affirmed by the Chief Inspector. (*Id.*). In August 2015, Hill and Moore settled a claim for destruction of plaintiff's CD player two years earlier. (*Id.*, ¶ 54). Plaintiff indicates defendants' conduct was manifestly outside the scope of their employment. (*Id.*).

In furtherance of the retaliatory scheme, on May 8, 2014, defendant Timothy Heyd, a doctor at WCI, halved the normal dosage of plaintiff's blood pressure medication, causing

4

plaintiff's blood pressure to rise. (*Id.*, ¶ 55). The week of July 17, 2014, plaintiff experienced elevated blood pressure and symptoms of dizziness, headache in the right temple area, and vision loss in his left eye. (*Id.*, ¶ 56). In furtherance of the retaliatory scheme, defendant Heyd examined plaintiff on July 21, 2014 and jokingly expressed disbelief that plaintiff could not see out of his eye; however, after Dr. Heyd examined plaintiff and was unable to see into the back of plaintiff's eye, he referred plaintiff to the eye doctor at WCI and increased his blood pressure medication to the regular dosage. (*Id.*, ¶ 58). The eye doctor did not show for his scheduled appointment the following day. (*Id.*). On July 23, 2014, plaintiff reported to unit staff he could not see out of his left eye, he felt dizzy, he had a headache, and he was concerned for his life due to further bleeding into his left eye. (*Id.*, ¶ 59). In furtherance of the retaliatory agenda, Dr. Heyd examined plaintiff and after he determined that he could not see into plaintiff's left eye, Dr. Heyd sent plaintiff to Ohio State University (OSU) Hospital. (*Id.*). Plaintiff was diagnosed by OSU Hospital medical staff with a retinal tear to his left eye and holes in his left and right retinas and was told he would be seen in one week to schedule surgery. (*Id.*, ¶ 60).

On July 24, 2014, when defendant Heyd examined plaintiff following his return from OSU Hospital, Heyd became unprofessional and belligerent for retaliatory reasons and informed plaintiff he was tired of plaintiff's "bellyaching," he had bent over backwards to send plaintiff out on medical emergency, and plaintiff was still not satisfied. (*Id.*, ¶ 61).

An ophthalmologist at OSU Hospital performed surgery to repair plaintiff's left retina on July 29, 2014, and a cataract resulted which required a second surgery for lens replacement on June 2, 2015. (*Id.*, ¶ 62). Since July 29, 2014, plaintiff has not been able to see clearly through his left eye and he has been experiencing a flashing pulse in his left eye, extreme dryness, and the feeling that something has been left in his left eye. Plaintiff has a left corneal scar that

required hospitalization in August 2014. For retaliatory reasons, he had been waiting since June 2, 2015 for the WCI staff to schedule a return trip to OSU Hospital for laser surgery to clear up the vision in his left eye. (*Id.*). On December 16, 2014, doctors examined plaintiff at OSU Hospital and prescribed a preservative free artificial tears ointment to prevent irritation to his left eye. (*Id.*, ¶ 63). On December 23, 2014 and January 1, 2015, defendant Tilton examined plaintiff for continued eye problems and advised plaintiff he would be placed on the list to see the WCI eye doctor as soon as possible. (*Id.*, ¶ 64).

Plaintiff was transported to OSU Hospital on March 5, 2015 and advised that a pre-operative visit would be scheduled for lens replacement surgery on the left eye with possible cornea replacement due to a scar caused by a herpetic infection; on March 9, 2015, defendant Tilton advised plaintiff surgery was recommended by OSU Hospital within 30 days and consultation would be submitted to collegial review with testing to be performed; on March 17, 2015, Tilton advised plaintiff that collegial review had been denied; and on March 27, 2015, plaintiff was referred to the WCI eye doctor, who examined him on March 30 and decided to make a submission for collegial review as soon as possible because a cataract was forming in plaintiff's right eye and he had vision loss in his left eye. (*Id.*, ¶¶ 65, 66). On April 8, 2015, plaintiff "signed for medical round trip" to OSU Hospital and collegial review was approved on April 16, 2015. (*Id.*). Plaintiff was examined for problems with his eyes and other issues on May 8, 2015 and was given a pass to purchase ibuprofen and allergy medication; medical tests and bloodwork were ordered on May 13-14; and surgical replacement of plaintiff's left eye lens was performed at OSU Hospital on June 2, 2015. (*Id.*, ¶ 67). On follow-up at OSU Hospital on June 11, 2015, plaintiff was told his left eye was slightly off center creating double vision and he had possible nerve damage and laser surgery was to be completed within 30 days. (*Id.*, ¶ 68).

On August 6, 2015, in furtherance of the retaliatory agenda, Tilton requested that plaintiff report to WCI medical services and informed plaintiff she was discontinuing artificial tears ointment that had been prescribed by OSU medical staff for two weeks and all allergy medication until it could be determined that plaintiff has dry eyes, and Tilton ordered defendant Wingate to confiscate these items from plaintiff's possession. (*Id.*, ¶ 69). Since August 6, 2015, plaintiff had experienced a flashing pulse and acute pain and the feeling of something being left in his left eye, and extreme dryness and decreasing vision in his right eye. (*Id.*).

On August 10, 2015, defendant Wingate called WCI medical hospital to report plaintiff's problems with his eyes, and plaintiff was denied medical care. (*Id.*, ¶ 62). On August 17, 2015, defendant Hill advised plaintiff that defendant Eddy had removed plaintiff from artificial tears ointment "rather than provide non-formulary ointment." On August 26, 2015, Dr. Wolfe examined plaintiff, and he determined something was pulling on plaintiff's retina and causing the flashing pulse and plaintiff's eye was dry and looked rough. He ordered that plaintiff be allowed to purchase artificial tears drops through the commissary and wrote a referral for plaintiff to return to OSU Hospital for laser surgery because he could not see into the back of plaintiff's eye. (*Id.*).

In furtherance of the retaliatory agenda and campaign of harassment for filing a grievance against Malott, defendant Schweitzer approved an order for medically approved size 12eee boots on October 7, 2013, and then refused to issue the boots on January 6, 2014. (*Id.*, ¶ 51; Exh. B). For retaliatory reasons, defendants Heyd, Tilton, McIntosh and Evans refused to verify plaintiff's need for medically approved size 12eee boots so that the mailroom would allow plaintiff to purchase them at his own expense, and these defendants and defendant Carlson attempted to alter plaintiff's shoe size on May 8, 2014. (*Id.*, ¶ 69). Defendant Nelson ordered plaintiff's medically

approved shoes, which had been authorized by defendant Crutchfield in 2014, to be returned to the vendor without justification in July of 2015. (*Id.*, ¶ 70). In addition, two birthday cards that plaintiff's mother had mailed to him in 2015 were returned to her marked "unable to identify inmate." (*Id.*). In addition, defendant Nelson denied approval for plaintiff to order a new CD player in place of the one destroyed by LeCI staff in 2013. (*Id.*; Exh. F).

In furtherance of the retaliatory agenda, on July 23, 2015, defendant Epperson accused plaintiff of masturbating while in his cell in the presence of a case manager. (*Id.*, ¶ 71(a)). Six days later, defendant Epperson came to plaintiff's cell door after the case manager had been in the house area and left and plaintiff had returned to his cell and asked plaintiff if he was alright. On July 31, 2015, plaintiff filed an informal complaint resolution against Epperson for harassment and violation of ODRC policies, which plaintiff did not pursue after being advised he had to refile it with another supervisor. On August 3, 2015 at 8:50 p.m., defendant Epperson shone his light into plaintiff's cell, opened the door, and asked plaintiff and his cellmate, "what are we having here[,] a meeting of the minds?" Defendant Wingate made similar accusations to plaintiff's cellmate some time later in August. (*Id.*).

Since he has been in the custody of ODRC on January 7, 2013, plaintiff has been denied treatment for Hepatitis C which was diagnosed in 2001 despite recurring symptoms of weight loss, fatigue, pain in his abdomen on the left side, diarrhea, and abnormal blood test results. (*Id.*, ¶ 71(a)).

Since filing the complaint in this lawsuit, Wingate has harassed and retaliated against plaintiff. (*Id.*). On December 2, 2015, defendant Wingate entered his cell and rummaged through the commissary on plaintiff's bunk. He then returned a few minutes later and turned the water on in the cell sink. Wingate later called plaintiff to the front desk and told him he had

checked plaintiff's bunk to make sure plaintiff was not lying on it and discovered plaintiff's commissary was on the bunk, and Wingate checked his cell a second time because he was doing a work order for repairs for low water pressure in a neighbor's sink. On December 10, 2015, in an attempt to harass plaintiff for filing administrative complaints, defendant Wingate requested that plaintiff report to the Rules Infraction Board (RIB) in isolation. (*Id.*). An unidentified officer walked over to defendant Nelson, who was sitting as the RIB chairperson, and obtained a paper from him which plaintiff later learned was the decision from the Chief Inspector's Office in LeCI-10-15-000113, brought it to plaintiff, and then advised plaintiff he was free to go. Defendant Nelson continued to look at plaintiff in an attempt to intimidate him the entire time this exchange was occurring. (*Id.*).

On December 26, 2015, CO Miller bumped against plaintiff's cell door for the third time in two or three weeks and apparently made a conduct report that she observed plaintiff with his pants pulled half way down and his penis exposed and fully erect. (*Id.*). The report was referred to the RIB for processing. Plaintiff appears to allege there were numerous miscommunications regarding the status of the conduct report and his placement in isolation during the two days following this incident and that these issues were in retaliation for the exercise of his constitutional rights. Plaintiff told Unit Manager P. Sarwar on December 28, 2015, that he believed Wingate and Epperson initiated "these actions" (an apparent reference to Millers' actions) against him with other inmates' assistance because several inmates approached Miller and spoke to her prior to her actions. Plaintiff was found not guilty of the rule infraction on January 19, 2016 and informed that same day that he was being given a security level reduction and transferred to another facility. (*Id.*). The transfer was atypical because it occurred without

48 hours' notice, deprived him of the opportunity to complete his computer classes at WCI, and created an "atypical hardship" for visiting purposes. (*Id.*).

Plaintiff alleges violations of his right to due process, his right to be free from race and other forms of discrimination, and his Eighth Amendment rights, including the denial of adequate medical care, and he alleges he was retaliated against for using the prison grievance procedure and reporting violations of the CAA and EPA standards. (*Id.*, ¶¶ 73, 74). He seeks declaratory relief, a preliminary injunction, nominal damages, and punitive damages.

## II. Plaintiff's motion for extension of time (Doc. 95)

Plaintiff requests an extension of time until counsel is appointed for him in this case to serve defendants Dr. Carlson, Mona Parks, Brenda Tilton, M. Westall, R. Wingate, and George D. Crutchfield. To date, summons have been returned executed for defendants Eddy, Evans, Hill, Nelson, Whitlow, Gay, Epperson, Malott, McIntosh, and Walder. (Docs. 42, 46). The undersigned issued a Report and Recommendation on January 5, 2018, recommending that plaintiff's complaint against defendants Carlson, Parks, Tilton, Westall, Wingate, and Crutchfield be dismissed for lack of service. (Doc. 99).

The Court has found that plaintiff is not entitled to counsel in this case. (*See* Docs. 31, 99). Further, the Report and Recommendation that plaintiff's complaint against the unserved defendants be dismissed based on plaintiff's failure to show good cause for lack of service is pending before the District Judge. (Doc. 99). Plaintiff must present any objections he has to the recommendation that the unserved defendants be dismissed to the District Judge. Plaintiff is not entitled to an extension of time to serve defendants Carlson, Parks, Tilton, Westall, Wingate, and Crutchfield.

### III. Plaintiff's motion for recusal of the District Judge (Doc. 101)

Plaintiff filed a Notice of Appeal (Doc. 100) and Motion Requesting Recusal (Doc. 101) on January 8, 2018.[2] Plaintiff requested that the Sixth Circuit Court of Appeals "recuse District Judge Susan J. Dlott from this case" pursuant to 28 U.S.C. § 455 to "remove any appearance of bias" on her part. (Doc. 101 at 1-2). As grounds for recusal, plaintiff states he previously filed a motion in February 2016 for Judge Dlott to recuse herself, which she denied (Doc. 18); Judge Dlott was previously appointed as the District Judge in *Alford v. Rice*, Case No. 3:10-cv-424; and Judge Dlott issued a decision denying plaintiff *in forma pauperis* status in this action on November 30, 2016, which the Court of Appeals vacated on appeal.

Judges are bound by the recusal standard set forth in 28 U.S.C. § 455(a), which provides that any United States judge "shall disqualify h[er]self in any proceeding in which h[er] impartiality might reasonably be questioned." *Ragozzine v. Youngstown State Univ.*, 783 F.3d 1077, 1079 (6th Cir. 2015) (quoting 28 U.S.C. § 455(a)). Section 455(a) requires a judge to recuse herself "if a reasonable, objective person, knowing all of the circumstances, would have questioned the judge's impartiality." *Id.* (quoting *Hughes v. United States*, 899 F.2d 1495, 1501 (6th Cir. 1990) (discussing 28 U.S.C. § 455(a)). "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Burley v. Gagacki*, 834 F.3d 606, 617 (6th Cir. 2016) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)).

Plaintiff has not made any allegations that indicate Judge Dlott's impartiality might reasonably be questioned in this case. Plaintiff has alleged no circumstances that create an appearance of bias. Plaintiff relies only on prior judicial rulings and Judge Dlott's involvement in another lawsuit brought by plaintiff which are not enough, standing alone, to support a bias

---

[2] The documents are identical because plaintiff filed the "Notice of Appeal and Motion Requesting Recusal" as a combined document.

claim and a recusal request.  Accordingly, plaintiff's motion for Judge Dlott's recusal (Doc. 101) should be denied.

## IV.  Plaintiff's third motion to supplement the second amended complaint (Doc. 104)

Plaintiff moves for leave to supplement the complaint pursuant to Fed. R. Civ. P. 15(d) to set forth transactions or occurrences which allegedly have taken place since the date of the second amended complaint.  Plaintiff seeks to add claims for violations of the Ohio Administrative Code and the Ohio Revised Code, which he claims in turn violated his First, Fifth, Eighth, and Fourteenth Amendment rights, against Gary Mohr, Director of the Ohio Department of Rehabilitation and Correction (ODRC)[3]; Andre Imbrogno, Chief of the Adult Parole Authority (APA); and APA members Ron Nelson, Michael Jackson, Kathleen Kovac, Thomas Cholar, Jr., Mark Houk, R.F. Rauschenberg, Alice Hanwork, Ms. Williams, and Ms. Smith.  Plaintiff alleges their actions have resulted in his loss of freedom from incarceration, interference with his due process and equal protection rights, cruel and unusual punishment, and exposure to retaliation, harassment and dangerous chemicals which permanently damaged plaintiff's eyes.

Plaintiff makes the following allegations in support on his motion to amend: On March 20, 2017, plaintiff attended a full panel hearing before the APA members at the London Correctional Institution.  Plaintiff attempted to address alleged due process violations which the APA caused in revoking his parole and which he claimed occurred at previous APA hearings in February 2011, July 2012, and May 2015.  The individual administering the hearing told plaintiff those matters would not be discussed at the hearing and advised him, "You say you have litigation on this issue, continue to litigate."  (*Id*. at 2).  In December 2016 and January 2017,

---

[3] Mohr was named as a defendant in the second amended complaint (Doc. 35) but was dismissed on initial screening of the complaint (Doc. 64).

plaintiff requested reconsideration of his "twenty-four month continuance in 2015" based on the Sixth Circuit's decision in this case which vacated this Court's Order denying plaintiff leave to proceed *in forma pauperis*. (*Id*.). The APA denied reconsideration in January 2017 even though plaintiff provided proof that he was under the threat of imminent danger when he "refused to lock" while at LeCI after reporting defendant Malott for intentionally venting dangerous refrigerants which caused permanent damage to plaintiff's eyes. (*Id*.). After plaintiff completed a program on May 31, 2017 as requested by the APA, he was placed in Limited Privilege Housing while at London Correctional Institution based on erroneous conduct reports prepared by ODRC staff in June 2017 and was transferred from Level 1A to 4A in July 2017. Plaintiff contacted the APA in August 2017 to inform the members about the retaliatory transfer to maximum security and requested a full board hearing after waiting for a "COBR" decision since March 2017. In September 2017, the Quality Assurance Analyst responded by informing plaintiff his request for a full board hearing had been received and, "In light of the fact there is pending litigation regarding your case, this office defers to the Attorney General's office. The attorneys assigned to your case are: Christopher Conomy and Christopher Bagi." (*See* Doc. 104-1 at 3). The APA subsequently continued his release until September 1, 2022 without notifying plaintiff in writing as required under Ohio Admin. Code 5120:1-1-11 and Ohio Rev. Code § 5149.101.

Plaintiff alleges the APA violated Ohio Admin. Code 5120:1-1-31 by placing a detainer on him in June 2000 but failing to act within two business days; instead, plaintiff alleges that he was held in the Montgomery County Jail from June 2000 until December 2002 without a determination having been made on the detainer issued by the APA defendants. He alleges the APA defendants violated Ohio Rev. Code § 2921.45(A), which prohibits public servants from

knowingly depriving or conspiring to deprive an individual of his constitutional rights, by deferring to Attorneys Conomy and Bagi (the attorneys representing the ODRC in plaintiff's Ohio Court of Claims Case No. 2016-00038 for defamation and excessive force) to determine plaintiff's release suitability. He also alleges the potential defendants violated DRC Policy 59-LEG-01.V, which prohibits reprisals against an inmate for challenging his conviction, sentence or conditions of confinement.

> Supplementation of a complaint is governed by Fed. R. Civ. P. 15, which states in part:
>
> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense.

Fed. R. Civ. P. 15(d). Whether to grant or deny a request to supplement a pleading is left to the sound discretion of the trial court. *Burse v. Robinson*, No. 2:14-cv-403, 2015 WL 2337781, at *2 (S.D. Ohio May 13, 2015) (King, M.J.) (citations omitted). In exercising its discretion under Rule 15(d), the Court considers "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." *Id.* (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Spies v. Voinovich*, 48 F. App'x 520, 527 (6th Cir. 2002) (same standard of review and rationale apply to motions filed under Fed. R. Civ. P. 15(a) and 15(d)). A proposed amendment is futile if it could not withstand a Rule 12(b)(6) motion to dismiss. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).

Proposed amendments and supplements to a prisoner's complaint must be *sua sponte* reviewed under 28 U.S.C. §§ 1915 and 1915A. Courts have generally held that "[u]nrelated

claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees - for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (citing 28 U.S.C. § 1915(g)). *See also Hetep v. Warren*, 27 F. App'x 308, 309 (6th Cir. 2001) (citation omitted) (proposed amendment adding new unrelated claims against new defendants not allowed).

It is clear when the second amended complaint, which is the operative complaint, and the motion to supplement are compared that the allegations made in each are not connected in any relevant manner. The allegations involve different types of claims, against different defendants, covering vastly different time frames. Whereas the second amended complaint is based on alleged acts and omissions by prison staff at LeCI and WCI beginning in May 2013 and continuing through December 2015, plaintiff's proposed supplement is based on acts and omissions by the appointing authority for the APA, the head of the APA, and APA members related primarily to his parole proceedings. In his motion to supplement, plaintiff challenges the legality of his parole proceedings under Ohio law, the impact of the proceedings on plaintiff's sentence, and resulting alleged violations of plaintiff's constitutional rights. Plaintiff alleges the APA's acts and omissions occurred as early as June 2000 and as late as September 2017. Plaintiff's unrelated claims are properly addressed in a separately filed new civil rights complaint and not in a supplemental complaint filed in this action. *See George*, 507 F.3d at 607; *Hetep*, 27 F. App'x at 309. Accordingly, plaintiff's motion to supplement his complaint to add claims against the APA based on transactions and events that allegedly occurred subsequent to the

transactions and occurrences set forth in the second amended complaint (Doc. 104) should be denied.

## V. Defendants' motion to dismiss the complaint (Doc. 56)

Defendants move to dismiss plaintiff's claims on the grounds that his claims against defendants in their official capacity are barred by the Eleventh Amendment (Doc. 56 at 10-11); the claims are barred by the *Leaman* doctrine, res judicata and collateral estoppel (*Id*. at 11-14); and plaintiff has failed to state a claim to relief under 42 U.S.C. § 1983 against defendants in their individual capacity because he has failed to state a plausible claim to relief and defendants are entitled to qualified immunity on plaintiff's claims for monetary damages (*Id*. at 14-24). Defendants further argue that plaintiff's claims should be dismissed pursuant to Fed. R. Civ. P. 20 because the second amended complaint is a "buckshot complaint" that joins unrelated claims against multiple defendants from two different prisons. (*Id*. at 24-26).

Plaintiff alleges that the facts in support of his claims are fully set forth in his second amended complaint and he also refers to the Court to Exhs. A, B, C, D and G attached to his memorandum in opposition to the motion. (Doc. 81). Plaintiff asserts that he engaged in protected activity, including filing grievances and pursuing litigation, that was a substantial or motivating factor for defendants' adverse actions. (*Id*. at 2, citing Doc. 35, Complaint; Doc. 41, Objections to Report and Recommendation; and Docs. 43, 48; Supplemental and Second Supplemental Complaints filed on June 26, 2017 and July 20, 2017).[4]

---

[4] The undersigned issued a Report and Recommendation on January 5, 2018, recommending that plaintiff's motions to supplement the complaint be denied. (Doc. 99). The Report and Recommendation is pending before the District Judge. Therefore, the allegations in the supplemental complaints are not properly considered in connection with defendants' motion to dismiss the second amended complaint.

## 1. Standard of review

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations as true and make reasonable inferences in favor of the non-moving party. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)). Only "a short and plain statement of the claim showing that the pleader is entitled to relief" is required. *Id*. (quoting Fed. R. Civ. P. 8(a)(2)). "[T]he statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id*. (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation marks omitted) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although the plaintiff need not plead specific facts, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Id*. (quoting *Twombly*, 550 U.S. at 555, 570). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While all well-pleaded factual allegations must be accepted as true, the Court does not have to accept legal conclusions that are "couched as" factual allegations. *Id*. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id*.

It is well-settled that a document filed pro se is "to be liberally construed" and that a pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, the Sixth Circuit has recognized that the Supreme Court's liberal

construction case law has not had the effect of "abrogat[ing] basic pleading essentials" in pro se suits. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

Government officials performing discretionary functions are generally shielded from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). "In determining whether qualified immunity applies, the court employs a two-part test, asking (1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009) (citations and quotation and alteration marks omitted).

### 2. Claims against defendants in their official capacity

Defendants allege that plaintiff's claims brought against them in their official capacity are barred by the Eleventh Amendment to the extent plaintiff seeks monetary damages. (Doc. 56 at 10-11). The Court has previously dismissed plaintiff's claims against all defendants in their official capacity to the extent plaintiff seeks money damages. (Doc. 64). Defendants' argument is moot and the Court therefore need not address it.

### 3. Waiver of claims under Ohio Rev. Code § 2743.02(A)(1)

Defendants allege that plaintiff's Ohio Court of Claims' filings operate as a waiver of his current claims under Ohio Rev. Code § 2743.02(A)(1). Ohio Rev. Code § 2743.02(A)(1) provides in part that "filing a civil action in the court of claims results in a complete waiver of any cause of action, based on the same act or omission, that the filing party has against any officer or employee. . . ." The waiver applies to federal causes of actions as well as causes of action based on state law. *Savage v. Gee*, 665 F.3d 732, 738 (6th Cir. 2012) ("federal damages

claims against state officials are barred where claims based on the same act or omission were previously raised in the Court of Claims. . . .") (citing *Leaman v. Ohio Dept. of Mental Retardation & Dev. Disabilities,* 825 F.2d 946 (6th Cir. 1987) (en banc)). *See also Thomson v. Harmony,* 65 F.3d 1314, 1318 (6th Cir. 1995) (explaining that the Court of Claims Act established a "*quid pro quo,* in which the state consents to be sued in exchange for a plaintiff's waiver of claims against the state's employees").

A plaintiff's choice to pursue relief in the Court of Claims must be "knowing, intelligent, and voluntary." *Asley v. Cooper,* No. 1:16-cv-338, 2017 WL 4857605, at *3 (S.D. Ohio Oct. 25, 2017) (Report and Recommendation), *adopted sub nom. Easley v. Cooper,* 2017 WL 5594125 (S.D. Ohio Nov. 21, 2017) (quoting *Leaman,* 825 F.2d at 956). In *Leaman,* the plaintiff was held to have made a knowing and voluntary waiver of her federal cause of action because she was represented by counsel at the time the Court of Claims action was filed. *Id.* (quoting *Leaman,* 825 F.2d at 956) ("The finding that the waiver was 'knowing, intelligent, and voluntary' presumably rests upon the fact that Ms. Leaman was represented by competent counsel when she filed her action in the Court of Claims, and counsel must be presumed to have known what the Court of Claims Act said. Under the circumstances of this case, we consider this an adequate foundation for the finding of voluntariness.")). This presumption does not automatically apply to pro se litigants and district courts must make a factual determination as to whether a pro se litigant knowingly, intelligently, and voluntarily waived his federal claims when filing suit in the Ohio Court of Claims. *Id.,* at *3 (citing *Kajfasz v. Haviland,* 55 F. App'x 719, 722 (6th Cir. 2003)). A knowing and voluntarily waiver of the right to proceed with federal claims when filing suit in the Ohio Court of Claims has been found when the pro se litigant has extensive prior litigation experience. *Id.* (citing *Easley v. Bauer,* No. 1:07-cv-37, 2008 WL 618642, at *3

(S.D. Ohio Feb. 29, 2008) (barring federal claims under *Leaman* because pro se plaintiff was "an experienced litigant" who had filed as many as ten other pro se federal civil actions, including one in which he presented evidence and arguments in a jury trial); *Williams v. Smith*, No. 2:05-cv-845, 2006 WL 2192470, at *10-11 (S.D. Ohio Aug. 1, 2006) (dismissing federal claims under *Leaman* because pro se plaintiff had been involved in at least three previous lawsuits and demonstrated "an above-average understanding of the law for a pro se litigant"); *Brooks v. McCoy*, No. 1:15-cv-39, 2015 WL 4538512, at *4 (S.D. Ohio July 27, 2015) (same)).

Ohio Rev. Code § 2743.02(A)(1) provides an exception to the waiver rule when an employee's actions were "manifestly outside the scope of [their] office or employment or [they] acted with malicious purpose, in bad faith, or in a wanton or reckless manner." *Turker v. Ohio Dept. of Rehabilitation and Corrections*, 157 F.3d 453, 458 (6th Cir. 1998) (citing Ohio Rev. Code § 2743.02(A)(1)). The determination as to whether the employee's actions were "*ultra vires* or malicious is to be made exclusively by the Ohio Court of Claims." *Id.* (citing Ohio Rev. Code § 2743.02(F); *Thomson*, 65 F.3d at 1318 n.3; *Haynes v. Marshall*, 887 F.2d 700, 704 (6th Cir. 1989)). The Court of Claims has "exclusive original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity." Ohio Rev. Code § 2743.02(F). If the Ohio Court of Claims determines the employee's actions fit the exception, the waiver of all claims which generally results from the filing in the Court of Claims is void. Ohio Rev. Code § 2743.02(A)(1).

Here, defendants argue that plaintiff made a knowing and voluntarily waiver of any claims when he filed his cases in the Ohio Court of Claims. (Doc. 56 at 13). Defendants allege that plaintiff's original and amended complaints filed in this Court in October 2015 and April 2017 demonstrate that plaintiff knew that filing his cases in the Court of Claims resulted in a

waiver of his causes of action because plaintiff acknowledged in the pleadings that filing a civil

action in the Court of Claims normally results in a complete waiver of any cause of action that

the filing party has against any officer or employee as defined in Ohio Rev. Code § 109.36.

(Docs. 1, 35, ¶ 54). Defendants note that plaintiff filed three of his Court of Claims actions after

he filed this lawsuit and after he acknowledged that filing a cause of action in the Court of

Claims normally waives any causes of actions presented to the Court of Claims. (*See* Doc. 56,

Exhs. 2, 3, 4). Defendants assert that plaintiff made allegations of harassment, conduct charges,

physical ailments, and lack of medical treatment in those cases. (*Id.*). Defendants argue that

under *Leaman* and its progeny, plaintiff is barred from raising claims he brought or could have

brought in the Ohio Court of Claims based on those allegations.

Plaintiff argues in response that his claims are not barred by Ohio Rev. Code §

2743.02(A)(1) because the Court of Claims did not rule on the merits of his retaliation claims in

Case No. 2014-00359 since it found it lacked jurisdiction.  (Doc. 81 at 11, citing Doc. 56-1).

Plaintiff further argues that because the Court of Claims lacked jurisdiction to hear claims arising

from but not limited to retaliation, harassment, restriction of communication, atypical transfer,

and "due process meaningful parole consideration," those claims are cognizable in this Court

under 42 U.S.C. § 1983. (*Id*, citing May 23, 2016 Order, pp. 3, 4, 5; Doc. 56-2, PAGEID# 628-

70, ¶ 1).[5]

Plaintiff has filed four cases in the Ohio Court of Claims related to the allegations he

makes in this case: *Brian Keith Alford v. ODRC,* Case No. 2014-00359-AD (April 21, 2014);

*Brian Keith Alford v. ODRC,* Case No. 2016-00038 (January 14, 2016); *Brian Keith Alford v.*

---

[5] In their reply, defendants contend that plaintiff did not respond to their argument under *Leaman* in his response to the motion to dismiss and their argument should therefore be considered to be unopposed. (Doc. 88 at 4-5). Although plaintiff's argument is not particularly clear, plaintiff has responded to defendants' argument as set forth above. Defendants' waiver argument therefore is not properly construed as unopposed.

*ODRC and Ohio State University Hospital,* Case No. 2016-00609 (Aug. 12, 2016); and *Brian*

*Keith Alford v. State Agency of Department, ODRC and Ohio State University Hospital,* Case

No. 2017-00592 (July 10, 2017). (Doc. 56, Exhs. 1, 2, 3, 4). His actions involve the following

incidents and allegations:

1) Case No. 2014-00359-AD (Doc. 56, Exh. 1): Plaintiff named the ODRC as a defendant, identified Moore and Malott as agents of the ODRC, and alleged: "[D]efendant negligently and maliciously disposed of my transcripts in retaliation for on-going civil-criminal litigation involving defendant." (*Id.* at 28). The Ohio Court of Claims dismissed plaintiff's case on the merits on October 7, 2014. (*Id.* at 28-32). Plaintiff acknowledged this Court of Claims case in the second amended complaint he filed in this case. (Doc. 35, ¶ 54).

2) Case No. 2016-00038 (Doc. 56, Exh. 2): Plaintiff named the ODRC as the sole defendant and alleged that the ODRC had caused plaintiff not to be granted parole and he has been targeted for harassment and retaliation through the issuance of additional erroneous conduct reports. Plaintiff alleged that defendants Wingate, Epperson and other individuals made defamatory statements accusing plaintiff of institutional rule violations he did not commit and caused plaintiff mental and physical pain that continued as a result of staff and inmate rumors; created stress and hardship; and heightened plaintiff's benign essential hypertension, which had advanced to malignant hypertension and caused damage to plaintiff's eyes. (Doc. 56, Exh. 2, Complaint, ¶¶ 5-10). Some of the claims have been dismissed pursuant to a motion for judgment on the pleadings and the rest of the case is being held in abeyance pending termination of this federal lawsuit. (*Id.*, Exh. 2 at 41-49).

3) Case No. 2016-00609 (Doc. 56, Exh. 3): Plaintiff named as defendants ODRC and OSU Hospital. Plaintiff alleged that OSU Hospital staff performed surgery in August 2014 to repair a retinal tear, a cataract formed on the eye following surgery, and a corneal scar resulted from the surgery. Plaintiff alleged he had experienced symptoms in his left eye following the surgery and had continuing limited vision in that eye resulting from the surgery, even though he had been advised by OSU Hospital that the membrane causing the limited vision would dissolve in several weeks. Plaintiff alleged his right eye vision was diminishing rapidly due to a cataract in that eye. He alleged no follow-up treatment had been performed since 2015 even though he had been going to the medical unit and the eye doctor, and he had not been able to receive non-formulary artificial tears drops or ointment since the ophthalmologist at OSU had requested them in 2015. Plaintiff's claims were dismissed by the Court of Claims on summary judgment on June 12, 2017, because plaintiff failed to identify an expert witness who would testify on the standard of care as required under Ohio law and he could not refute defendants' evidence on his medical negligence claim. (Doc. 56, Exh. 3 at 4-8).

4) Case No. 2017-00592 (Doc. 56, Exh. 4): Plaintiff alleged that OSU Hospital committed medical negligence which resulted in continued problems following his left eye surgery; that ODRC failed to perform follow-up procedures; and the ODRC refused to provide "non-formulary medications" ordered by the OSU Hospital staff as early as March 2015, resulting in continued pain and discomfort. This action remains pending.

To the extent plaintiff's claims in this lawsuit were brought or could have been brought in these four Ohio Court of Claims actions, plaintiff has waived such claims by filing suit in the Court of Claims. Plaintiff has extensive prior litigation experience, which is relevant in determining whether the waiver of his claims was knowing and voluntary. *See Easley*, 2008 WL 618642, at *3; *Williams*, 2006 WL 2192470, at *10-11; *Brooks*, 2015 WL 4538512, at *4. Plaintiff has filed at least five prior prisoner civil rights lawsuits. *See Brian Keith Alford v. Reginald Wilkinson, et al.,* Case No. 2:97-cv-00997 (S.D. Ohio October 29, 1997) (Graham, J.; Kemp, M.J.); *Brian Keith Alford v. Gary Mohr, et al.,* Case No. 2:98-cv-00034 (S.D. Ohio January 8, 1998) (Smith, J.); *Brian Keith Alford v. Reginald J. Wilkinson, et al.,* Case No. 2:98-cv-00226 (S.D. Ohio February 27, 1998) (Marbley, J.; Abel, M.J.); *Brian Keith Alford v. Judge Walter Herbert Rice, et al.*, Case No. 3:10-cv-00424 (S.D. Ohio January 28, 2011) (Dlott, J.; Merz, M.J.); *Brian Keith Alford v. Henry J. Sadowski, et al.,* Case No. 4:10-cv-02542 (N.D. Ohio February 15, 2011) (Boyko, J.). Plaintiff has also pursued several appeals in these prior cases and in this case, including an appeal to the United States Supreme Court in one instance. *See Brian Keith Alford v. Reginald Wilkinson, et al.,* Case No. 2:97-cv-00997 (Docs. 17-19); *Brian Keith Alford v. Reginald J. Wilkinson, et al.*, Case No. 2:98-cv-00226 (Docs. 12-13); *Brian Keith Alford v. Henry J. Sadowski, et al.,* Case No. 4:10-cv-02542 (Feb. 15, 2011). Plaintiff has acknowledged in both the original complaint and in the second amended complaint filed here that the filing of an action in the Court of Claims typically acts as a waiver of any claims arising from the same allegations. (Docs. 1, 35, ¶ 54). Plaintiff does not deny that by filing his actions

in the Court of Claims, he knowingly and voluntarily waived any claims presented in the Court of Claims actions.

Further, the fact that the Court of Claims did not consider some of plaintiff's claims on the merits or that some of his claims are still pending is irrelevant: "The act of *filing* a case with the Ohio Court of Claims results in a waiver of federal claims." *Asley*, 2017 WL 4857605, at *4 (quoting Ohio Rev. Code § 2743.02(A)(1) ("*filing* a civil action in the court of claims results in a complete waiver of any cause of action, based on the same act or omission. . . .") (emphasis added by *Asley*); *Fischer v. Kent State Univ.*, No. 5:09-cv-315, 2010 WL 11519471, at *2 (N.D. Ohio June 18, 2010) ("whether the plaintiff's action in the Ohio Court of Claims is dismissed or still pending is irrelevant, as the waiver is complete upon filing"), *aff'd on other grounds*, 459 F. App'x 508 (6th Cir. 2012); *Higginbotham v. Ohio Dep't of Mental Health*, 412 F. Supp.2d 806, 812 (S.D. Ohio 2005) ("[p]laintiff's filing in the Court of Claims constituted a complete waiver of any state or federal claims against the individual employees"); *Thomas v. Ohio Dep't of Rehab. and Corr.*, 36 F. Supp.2d 1005, 1008 n.3 (S.D. Ohio 1999) (language of the statute and Sixth Circuit cases indicates that "filing, alone, is sufficient to trigger the waiver"); *Johansen v. Banks,* No. 1:09-cv-802, 2010 WL 1839010, at *2 (S.D. Ohio Apr. 30, 2010) (same)). The sequence of filings in the Court of Claims and federal court is irrelevant. *Id.* (citing *Fischer*, 459 F. App'x at 509).

Thus, the only issue to be resolved in connection with defendants' waiver defense under Ohio Rev. Code § 2743.02 is whether the various claims plaintiff raises in this lawsuit are covered by the waiver because plaintiff presented the same claims in the Court of Claims or could have brought those claims in the Ohio Court of Claims. This issue will be addressed below as part of the evaluation of plaintiff's claims against the individual defendants.

### 4. Liability under 42 U.S.C. § 1983

Plaintiff brings claims against defendants under 42 U.S.C. § 1983. To state a claim under § 1983, plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). The first step in determining whether plaintiff has stated a claim to relief under § 1983 is identifying the specific constitutional right that allegedly has been violated. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Section 1983 liability "cannot be premised solely on a theory of respondeat superior, or the right to control employees." *Heyerman v. County of Calhoun,* 680 F.3d 642, 647 (6th Cir. 2012). Further, an alleged failure to intervene on the plaintiff's behalf is insufficient to support the imposition of liability under § 1983 for a violation of the plaintiff's constitutional rights. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). To impute liability onto supervisory personnel under § 1983, plaintiff must show "that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Taylor v. Larson*, 505 F. App'x 475, 478 (6th Cir. 2012) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *see also Meeks v. Schofield*, 625 F. App'x 697, 702 (6th Cir. 2015) (to establish supervisory liability under § 1983, the plaintiff must prove that the supervisory official was personally responsible for or actively participated in the alleged unconstitutional actions that caused his injury) (citing *Grinter v. Knight,* 532 F.3d 567, 575 (6th Cir. 2008)).

### i. Defendant Malott

Plaintiff brings a claim against defendant Malott for violation of his right to humane conditions of confinement as guaranteed by the Eighth Amendment. *See Farmer v. Brennan*,

511 U.S. 825, 832 (1994) (prison officials are required under the Constitution to "provide humane conditions of confinement"). To state a claim for a violation of this Eighth Amendment right, plaintiff must plead that (1) the risk of harm was "objectively sufficiently serious," and (2) "the official acted with deliberate indifference to inmate health or safety." *Taylor*, 505 F. App'x at 477 (citing *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010) (internal quotation marks omitted)).

Defendants argue that plaintiff has not alleged facts to show that conditions at LeCI fell below contemporary standards of decency because plaintiff alleges only that the venting occurred over an eight-month period and that the machine for recovering the refrigerants was inoperable during that period. (Doc. 56 at 23). Defendants contend that plaintiff does not provide specific facts to show that a serious deprivation occurred and that Malott acted with a sufficiently culpable state of mind.

Plaintiff has stated a plausible claim against defendant Malott for a violation of his Eighth Amendment rights arising from the conditions of his confinement. Plaintiff alleges in the second amended complaint that between February and October 8, 2013, defendant Malott intentionally vented dangerous refrigerants into the atmosphere at LeCI and did not comply with safe disposal requirements, which put plaintiff in imminent danger of death or serious bodily harm. (Doc. 35, ¶¶ 44, 46; Exh. A). Plaintiff alleges that as a result of Malott's actions, plaintiff suffered permanent eye damage with long-lasting pain and other symptoms and he required surgeries and hospitalizations. (*Id.*, ¶¶ 44, 45, 46). Taken as true, these facts sufficiently allege that Malott's failure to protect plaintiff from the risk of harm was "objectively sufficiently serious," and that Malott acted with deliberate indifference to plaintiff's health or safety. *Taylor*, 505 F. App'x at 477.

Defendants are not entitled to qualified immunity on plaintiff's Eighth Amendment claim against defendant Malott at this juncture. The complaint states a plausible claim against Malott for a violation of plaintiff's Eighth Amendment rights, and the applicable law on a prisoner's right to humane conditions of confinement was well-established on the date of the alleged violation. Accordingly, defendants' request for qualified immunity on plaintiff's Eighth Amendment claim against Malott should be denied.

### ii. Defendant Schweitzer

Plaintiff brings two claims against defendant Schweitzer: (1) Schweitzer "remained mute and took no corrective active" and "explicitly refused to investigate" violations of the CAA and "Safe Disposal Requirements" by defendant Malott after being put on notice of the violations (Doc. 35, ¶ 71(c)); and (2) Schweitzer retaliated against plaintiff for exercising his due process rights by approving an order for medically approved size 12eee boots on October 7, 2013 and then refusing to issue the boots on January 6, 2014 in retaliation for plaintiff filing a grievance with Schweitzer against defendant Malott, No. LeCI-10-13-000134, on October 17, 2013, which was denied. (Doc. 35, ¶¶ 49, 51, 71(c)).

Defendants argue that plaintiff's allegations against defendant Schweitzer, the deputy warden at LeCI, appear to be based on his position as a supervisor or his participation in grievance procedures. (Doc. 56). Defendants allege that plaintiff makes no allegations to suggest that Schweitzer was aware of the alleged environmental issues, plaintiff's report to the EPA, or plaintiff's grievance submission. To the extent plaintiff alleges that defendant Schweitzer refused to investigate clear violations of the CAA for retaliatory reasons (*Id.*, ¶ 49), plaintiff's claim should be dismissed. Plaintiff does not allege that Schweitzer "directly participated, encouraged, authorized or acquiesced in" the alleged violations as required to state

a claim under § 1983. *Bellamy*, 729 F.2d at 421; *Meeks*, 625 F. App'x at 702. Plaintiff's allegations are insufficient to impose supervisory liability on Schweitzer.

Defendants construe plaintiff's allegations that Schweitzer refused to issue medically approved boots after having previously approved an order for the boots as a claim for negligent or unintentional deprivation of property, which defendants assert is not actionable under § 1983. (Doc. 56 at 23-24, citing *Daniels v. Williams,* 474 U.S. 327, 328 (1986)). Defendants argue that plaintiff had an adequate post-deprivation remedy in the Ohio Court of Claims for the deprivation, plaintiff in fact utilized that remedy, and he has not stated a valid claim under 42 U.S.C. § 1983.[6] (*Id.* at 24).

The Court finds that plaintiff's claim against defendant Schweitzer based on the return of plaintiff's medically approved boots should be construed as a First Amendment retaliation claim. The elements of a First Amendment retaliation claim are: "1) [the plaintiff] was engaged in protected conduct; 2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and 3) the adverse action was motivated, at least in part, by the protected conduct." *Shehee*, 199 F.3d at 300-01 (quoting *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)).

Plaintiff alleges that he engaged in protected conduct by filing a grievance against Malott so as to satisfy the first element of a retaliation claim. Plaintiff also asserts that Schweitzer took an adverse action against him by refusing to issue medically approved boots that had been ordered for plaintiff. Assuming this action would deter a person of ordinary firmness from

---

[6] In cases involving an intentional deprivation of property, a plaintiff may not bring a § 1983 suit claiming a denial of procedural due process if adequate state remedies exist. *Davis v. Clinton,* 74 F. App'x 452, 455 (6th Cir. 2003) (citing *Hudson v. Palmer,* 468 U.S. 517, 533-36, (1984) (extending *Parratt v. Taylor,* 451 U.S. 527, 543-44 (1981), to intentional property deprivations)). "For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy." *Hudson,* 468 U.S. at 533.

engaging in protected conduct and thus satisfy the second element of a retaliation claim, plaintiff

has not alleged sufficient facts to permit a finding that the adverse action was motivated, at least

in part, by plaintiff's protected conduct. *See Shehee,* 199 F.3d at 301. There are no factual

allegations in the second amended complaint that indicate there was any connection between

plaintiff's filing of his informal complaint against Malott in October 2013 and Schweitzer's

refusal to issue medically approved boots to plaintiff three months later. Plaintiff's assertion that

Schweitzer took this action in retaliation for the filing of the complaint against Malott is nothing

more than a legal conclusion "couched as" a factual allegation. *See Twombly,* 550 U.S. at 555.

Plaintiff has not stated a plausible claim of First Amendment retaliation against Schweitzer based

on this defendant's act of refusing to issue plaintiff's medically approved boots three months

after plaintiff made an informal complaint against Malott. Plaintiff's First Amendment

retaliation claim against Schweitzer should be dismissed under Fed. R. Civ. P. 12(b)(6).

### iii. Defendant Moore

Plaintiff brings two claims against defendant Moore, the warden at LeCI. First, plaintiff

claims that defendant Moore refused to investigate alleged violations of the CAA for retaliatory

reasons. (Doc. 35, ¶ 49). Plaintiff alleges that like Schweitzer, defendant Moore "remained

mute and took no corrective action, failed to act after being put on notice of [CAA] violations by

Defendant Malott, and explicitly refused to investigate clear violations of the Clean Air Act of

the EPA and the Safe Disposal Requirements. . . ." *(Id.,* ¶ 71(c)). Plaintiff does not allege that

Moore "encouraged the specific incident of misconduct or in some other way directly

participated in it" as required to state a claim under § 1983. *Bellamy,* 729 F.2d at 421.

Plaintiff's allegations are insufficient to impose supervisory liability on Moore.[7] *Id.*; *Meeks,* 625

---

[7] Plaintiff also alleges in his opposing memorandum that defendant Moore "implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending officer Walder." (Doc. 81 at 4). Plaintiff

F. App'x at 702. Plaintiff has not stated a claim to relief against defendant Moore under § 1983 for refusing to investigate violations of the CAA.

Second, plaintiff appears to claim that Moore did not properly compensate him for lost or destroyed property. Plaintiff alleges in this regard that Moore settled a claim in August 2015 for the destruction of his CD player two years earlier. Plaintiff's conclusory allegation does not suggest that settlement of the claim violated his rights under the Eighth Amendment or any other constitutional provision. (Doc. 35, ¶ 54).

Plaintiff asserts in his opposing memorandum that Moore denied him compensation for 1,654 pages of trial transcripts that turned up missing after plaintiff was transferred to WCI. (Doc. 81 at 4, citing Doc. 35, ¶ 54; Doc. 81, Exh. C). However, plaintiff does not make any allegations in the second amended complaint that implicate Moore in the loss of the transcripts. Thus, plaintiff has not stated a claim against defendant Moore in connection with a deprivation of plaintiff's property.

Further, plaintiff has waived any claim against Moore for the loss/destruction of his personal property and transcripts or failure to be compensated for loss of his personal property by asserting these same claims in the Ohio Court of Claims case that plaintiff filed on April 21, 2014. (Doc. 56, Exh. 1). In that case, plaintiff named the ODRC as a defendant and Moore and Malott as agents of the ODRC and he alleged: "[D]efendant negligently and maliciously disposed of my transcripts in retaliation for on-going civil-criminal litigation." (*Id*. at 28). Plaintiff also alleged that defendant ODRC, through Moore and other agents, removed an HVAC refrigeration book from plaintiff's property. (*Id*. at 30). The Court of Claims rendered judgment on the merits in favor of defendant because it found there was not sufficient evidence from which

---

does not make this allegation in the second amended complaint and the Court therefore need not address it. In any event, plaintiff's allegation amounts to a legal conclusion couched as a factual allegation, which is insufficient to state a claim for relief under § 1983.

it could "infer plaintiff was in possession of either the legal documents or the book." (*Id.* at 31-32). The Court of Claims did not make a finding that Moore or any other agent of the ODRC acted with a malicious purpose. Thus, these claims against defendant Moore should be dismissed under Ohio Rev. Code § 2743.02.

### iv. Defendant Hudson

Plaintiff alleges that defendant Dan Hudson, the Institutional Inspector at LeCI who was responsible for ensuring the investigation and speedy resolution of grievances at LeCI, refused to investigate clear violations of the CAA for retaliatory reasons. (Doc. 35, ¶¶ 11, 71(c)). Plaintiff alleges that Hudson, like defendants Moore and Schweitzer, "remained mute and took no corrective active" after he was put on notice of Malott's alleged CAA violations and that he "explicitly refused to investigate" violations of the CAA and Safe Disposal Requirements. (*Id.*, ¶ 71(c)). Plaintiff's allegations against Hudson are premised on a failure to investigate another defendant's alleged misconduct, which is an insufficient basis for imposing liability under § 1983. *Shehee*, 199 F.3d at 300; *Meeks*, 625 F. App'x at 702. Plaintiff has not stated a claim to relief against defendant Hudson and this claim should be dismissed under Rule 12(b)(6).

### v. Defendant Whitlow

Defendants argue that plaintiff's claim against LeCI Correctional Officer Whitlow must be dismissed because plaintiff does not make any specific factual allegations against Whitlow in the amended complaint; rather, plaintiff only generally alleges that defendant Whitlow retaliated against him. (Doc. 56 at 3-4, citing Doc. 35, ¶ 71(c)). Plaintiff alleges in his response to the motion to dismiss that defendants Whitlow and Schweitzer retaliated against plaintiff for reporting Malott to the EPA by approving and ordering medically approved boots and then failing to issue the boots. (Doc. 81 at 4, citing Doc. 35, ¶¶ 16, 51, 71(c), Exhs. A, B, C).

However, the second amended complaint includes such allegations only against Schweitzer, not Whitlow. (*Id.*, ¶ 51). Plaintiff's general allegations that defendant Whitlow retaliated against him, unsupported by any specific factual allegations, are insufficient to state a claim to relief against Whitlow. Plaintiff's claims against Whitlow should be dismissed under Fed. R. Civ. P. 12(b)(6).

### vi. Defendant Nelson

Plaintiff makes the following allegation against defendant Nelson: "In furtherance of the retaliatory agenda and/or campaign of harassment of one or more defendants in this case, both individually and/or collectively, in July 2015 Defendant Nelson ordered Plaintiff's medically approved shoes from an approved vendor, authorized by Defendant Cructhfield [sic] as early as October or November of 2014 by phone (i-phone) from unit 2-c while Plaintiff was standing there in Defendant Crutchfield's presence, returned to vendor without justification." (*Id.*, ¶ 70). Plaintiff also alleges that defendant Nelson denied approval for plaintiff to order a new CD player in place of one destroyed by LeCI staff in 2013. (*Id.*, ¶ 70; Exh. F). Finally, plaintiff alleges that on December 10, 2015, he was called to the RIB in isolation, where Nelson was sitting as the RIB chair, and was handed the decision from the Chief Inspector's Office in LECI 10-15-000113. Plaintiff alleges that Nelson "was looking at plaintiff attempting to intimidate" him during this exchange and that these acts were "clearly designed to harass plaintiff and [were] in retaliation of filing of non-frivolous administrative remedies." (*Id.*, ¶ 71(a)).

Defendants allege that plaintiff has failed to state a claim to relief for retaliation because he has made only a conclusory allegation that he was retaliated against. (Doc. 56 at 19-20). Defendants also allege that plaintiff's allegations related to the size 12eee boots does not state a

valid claim under § 1983 because it is a claim for the taking of property for which an adequate remedy is available in the Ohio Court of Claims. (*Id.*).

Plaintiff's claim against Nelson is properly construed as a First Amendment retaliation claim. Plaintiff has failed to satisfy the adverse action element of a retaliation claim against defendant Nelson insofar as he alleges that Nelson stared at him during an RIB procedure and failed to approve a new CD player for plaintiff. These allegations describe *de minimis* conduct that would not likely chill a person of ordinary firmness from engaging in protected activity. *Smith v. Yarrow*, 78 F. App'x 529, 540 (6th Cir. 2003) ("certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations. . . ."); *Meeks*, 625 F. App'x at 701-02 (defendants' searches of the prisoner's work station or denial of access to the library on one occasion were *de minimis* conduct that did not constitute adverse action). *See also Violett v. Reynolds,* 76 F. App'x 24, 27 (6th Cir. 2003) ("[V]erbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim."). Assuming that Nelson's order to return the medically approved boots satisfies the adverse action prong of a First Amendment retaliation claim, plaintiff's retaliation claim nonetheless fails because plaintiff has not alleged facts to show there was a causal connection between any protected activity and Nelson's order. Plaintiff's allegation that Nelson took this action in retaliation for some unspecified protected conduct by plaintiff amounts to nothing more than a legal conclusion "couched as" a factual allegation. *Twombly,* 550 U.S. at 555. Plaintiff's First Amendment retaliation claim against defendant Nelson should be dismissed.

### vii. Defendants McIntosh and Evans

Plaintiff alleges that defendants McIntosh and Evans, along with defendants Tilton and Heyd, "refused to verify Plaintiff's need for medically approved size 12eee boots from his

medical file so that mailroom would allow Plaintiff to purchase them at his expense," and that these defendants together with defendant Carlson attempted to alter plaintiff's shoe size on May 8, 2014. (Doc. 35, ¶ 69). Plaintiff alleges that McIntosh was the hospital administrator and Evans was the assistant hospital administrator at WCI at all relevant times. (*Id.*, ¶¶ 25, 26).

Plaintiff does not make any allegations to indicate that McIntosh and Evans were directly involved in any decision related to plaintiff's medically approved boots, and these defendants cannot be held liable in their supervisory capacity. *Bellamy*, 729 F.2d at 421; *Meeks*, 625 F. App'x at 702. Further, plaintiff's allegation that defendants attempted to alter his shoe size is much too vague to support a plausible claim that defendants' action was "adverse" and likely to chill a person of ordinary firmness from engaging in protected activity. Finally, plaintiff has made no allegations to draw a connection between his protected activity and McIntosh and Evans' decisions related to his shoe size or medically approved boots. Plaintiff's retaliation claims against McIntosh and Evans should be dismissed under Fed. R. Civ. P. 12(b)(6).

### viii. Defendant Hill

Plaintiff alleges that defendant Hill retaliated against him by (1) returning a grievance to plaintiff that he had filed with her on October 20, 2014, after the Ohio Court of Claims administratively dismissed his claim for loss/theft of property, without responding to the grievance; and (2) advising plaintiff when he was sent to her office to speak with her about the loss/destruction of his property on April 30, 2015, that there was nothing further she could do regarding this, even though she was required to take action under Ohio Admin. Code 5120-9-31(L). (Doc. 35, ¶¶ 52, 53). Plaintiff also alleges that Hill settled a claim on August 6, 2015, for destruction of his CD player in 2013, two years prior to his arrival at WCI. (*Id.*, ¶ 54). Plaintiff further alleges that Hill advised plaintiff on August 17, 2015 that defendant Eddy had "removed Plaintiff from Artificial Tears Ointment rather than provide nonformulary ointment." (*Id.*, ¶ 62).

Plaintiff's claims against defendant Hill should be dismissed under Fed. R. Civ. P. 12(b)(6). First, as discussed above, plaintiff has not alleged a violation of his constitutional rights in connection with the settlement of his claim for destruction of his CD player. Second, Hill's failure to provide appropriate remedies for plaintiff's grievance or her participation in a grievance procedure is insufficient to trigger liability under § 1983. *See Shehee*, 199 F.3d at 300 (prison officials whose only roles "involve their denial of administrative grievances and their failure to remedy the alleged [unconstitutional] behavior" are not subject to liability under § 1983). In addition, Hill cannot be held liable under § 1983 for relaying orders from Dr. Eddy to plaintiff. Finally, plaintiff has waived any claims he has against defendant Hill for the loss/destruction of his personal property that allegedly occurred upon his transfer from LeCI to WCI. Plaintiff brought a claim based on these same allegations in the Court of Claims, Case No. 2014-00359-AD, which he filed on April 21, 2014. (Doc. 56, Exh. 1). Plaintiff was required to

assert any claims he had against Hill for the destruction of his property at that time. For these reasons, plaintiff's claims against Hill brought in this lawsuit should be dismissed under Fed. R. Civ. P. 12(b)(6).

### ix. Defendant Walder

Plaintiff makes one factual allegation against defendant Walder in the amended complaint: "Defendant Walder threatened Plaintiff without provocation" for filing an informal complaint against Malott on October 17, 2013. (Doc. 35, ¶ 50). Plaintiff alleges in his response to the motion to dismiss that Walder threatened him for reporting Malott to the EPA in Washington, D.C. (Doc. 81 at 3, citing Doc. 35, ¶¶ 15, 43(a), (b), 50, 71(c), 71(d); Exhs. A, B). Plaintiff does not describe the nature of the threat or allege that Walder acted on his one-time threat or caused any injury to plaintiff. Plaintiff's vague allegations do not satisfy the adverse action or causal connection elements of a retaliation claim. *See Shehee*, 199 F.3d at 300-01. Plaintiff's claim against defendant Walder should therefore be dismissed under Fed. R. Civ. P. 12(b)(6).

### x. Defendant Gay

Plaintiff's sole allegation against LeCI Officer Gay is that he "failed to act on or report" the threat by Officer Walder, thereby participating in the retaliatory campaign of harassment. (Doc. 35, ¶ 71(d)). Plaintiff adds in his opposing memorandum that Defendant Gay lied when questioned about the threat. (Doc. 81 at 4, citing Doc. 35, ¶¶ 14, 50, 71(c), 71(d)). Plaintiff has not stated a claim to relief against defendant Gay. A failure to act is insufficient to state a claim under the Eighth Amendment. *Shehee*, 199 F.3d at 300 (alleged failure to intervene on the plaintiff's behalf is insufficient to state a claim to relief). Plaintiff's claim against defendant Gay should be dismissed under Fed. R. Civ. P. 12(b)(6).

### xi. Defendant Epperson

Plaintiff alleges that in furtherance of the retaliatory agenda or campaign of harassment

of one or more defendants, WCI Correctional Officer Epperson accused plaintiff on July 23,

2015 of masturbating in his cell while in the presence of the case manager; stopped at plaintiff's

cell door on July 29, 2015 after the case manager had left the block and asked plaintiff if he was

"alright"; and shone his light into plaintiff's cell on August 3, 2015, opened the door and asked

plaintiff and his cellmate, "what are we having here[,] a meeting of the minds?" (Doc. 35, ¶

71(a)). Plaintiff alleges that sometime later in August, defendant Wingate made similar

accusations regarding the case manager to plaintiff's cellmate. (*Id.*, ¶ 71(a)). Sergeant Combs

later advised plaintiff that he should agree to a cell move since he had an incident report written

by the case manager on September 18, 2015, although Combs advised plaintiff he was

dismissing the incident report for lack of evidence.

Plaintiff waived his claims against defendant Epperson under Ohio Rev. Code §

2743.02(A)(1) by filing suit in the Ohio Court of Claims. Plaintiff raised claims based on the

above incidents in the Court of Claims, Case No. 2016-00038, which he filed against the ODRC

on January 14, 2016. Plaintiff alleged in the Court of Claims that Wingate, Epperson and other

individuals made defamatory statements accusing plaintiff of institutional rule violations he did

not commit and caused plaintiff mental and physical pain that continued as a result of staff and

inmate rumors, created stress and hardship, and heightened plaintiff's benign essential

hypertension, which had advanced to malignant hypertension and caused damage to plaintiff's

eyes. (Doc. 56, Exh. 2). Plaintiff also alleged that he had been charged with erroneous conduct

reports charging him with Rule 14 violations for masturbation, which plaintiff believed

constituted defamation, including conduct reports issued on September 18, 2015 and December

26, 2015. The Court of Claims found that plaintiff could proceed with his defamation claims related to these charges but subsequently stayed the proceedings pending the outcome of this action. To the extent plaintiff raised claims of constitutional violations, the Court of Claims dismissed plaintiff's claims for lack of jurisdiction. Because plaintiff presented or could have presented the same claims in the Court of Claims action that he brings against Epperson here, plaintiff has waived his claims against defendant Epperson.

Even if plaintiff had not waived his claims against Epperson, those claims should be dismissed because the allegations of the second amended complaint do not state a constitutional claim under § 1983 against defendant Epperson. Plaintiff alleges that after the first two incidents involving Epperson in July 2015, he filed an informal complaint resolution against Epperson. (Doc. 35, ¶ 71(a)). Plaintiff alleges that he told the unit manager that he did not think there would be any further issues with Epperson, but Epperson then made the comment about the "meeting of the minds" on August 3, 2015. (*Id.*). Accepting these allegations as true, they are insufficient to state a claim to relief for retaliation against defendant Epperson. The conduct plaintiff attributes to Epperson is *de minimis* and would not deter a person of ordinary firmness from exercising their rights. In fact, plaintiff was not deterred from filing a complaint against Epperson after the first two comments. (*Id.*). Further, plaintiff has not alleged facts to suggest that Epperson made the comments in retaliation for any protected activity plaintiff had taken. Plaintiff's allegations therefore do not satisfy the adverse action and causal connection elements of a First Amendment retaliation claim. *See Shehee*, 199 F.3d at 300-01. For these reasons, plaintiff's retaliation claim against Epperson should be dismissed under Fed. R. Civ. P. 12(b)(6).

### xii. Defendant Eddy

Plaintiff alleges that defendant Eddy was the "Chief [M]edical Examiner for ODRC and the highest authority over the operations and management of the Medical Department to ODRC." (Doc. 35, ¶ 21). Plaintiff's sole allegation against defendant Eddy in the complaint is that on August 17, 2015, he was informed by defendant Hill that Eddy had "removed plaintiff from Artificial Tears Ointment rather than provide nonformulary[8] ointment." (*Id.*, ¶ 62). Plaintiff states that nine days later, on August 26, 2015, Dr. Wolfe examined plaintiff and determined something was pulling on plaintiff's retina and causing the flashing pulse plaintiff was experiencing, plaintiff's eye was dry and looked rough, he ordered that plaintiff be allowed to purchase artificial tears drops through the commissary, and he wrote a referral for plaintiff to return to OSU Hospital. (*Id.*).

Plaintiff raised this precise claim in the Court of Claims, Case No. 2016-00609 filed on Aug. 12, 2016. (Doc. 56-3). The Court of Claims construed plaintiff's claim as a medical negligence claim and dismissed the claim on summary judgment because plaintiff had not provided an expert report from an expert who would testify at trial on plaintiff's behalf on the standard of care and proximate cause as required under Ohio law and he had not refuted defendant's evidence. (*Id.*). There are no exceptions to the waiver rule that apply here. Plaintiff does not allege that defendant Eddy ordered he be removed from the Artificial Tears Ointment for a malicious purpose or any other improper motive, and the Court of Claims did not make such a finding. Further, even if plaintiff had not presented this claim in the Court of Claims, he does not allege that defendant Eddy acted with deliberate indifference or that plaintiff suffered any pain or injury as a result of defendant Eddy's actions as required to state an Eighth

---

[8] "Nonformulary" means: "Not approved for use. The term is applied to a drug whose prescription is not usually reimbursed by a health insurer because it is absent from the formulary." https://medical-discitonary.thefreedictionary.com/nonformulary.

Amendment claim for a denial of medical care. *Estelle*, 429 U.S. at 104 (to state an Eighth Amendment claim for denial of medical care, plaintiff must show that prison officials acted with "deliberate indifference to [his] serious medical needs"); *see also Brooks v. Celeste*, 39 F.3d 125, 127 (6th Cir. 1994). Plaintiff has therefore failed to state a claim to relief against defendant Eddy. This claim should be dismissed under Fed. R. Civ. P. 12(b)(6).

### xiii. Defendant Heyd

Plaintiff alleges that defendant Dr. Heyd treated him at WCI following plaintiff's transfer to WCI on March 10, 2014. (*See* Doc. 35, ¶ 52). Plaintiff alleges that "in furtherance of the retaliatory agenda," on May 8, 2014, Heyd decreased plaintiff's "blood pressure medication to half the normal dosage, causing Plaintiff's blood pressure to elevate." (*Id.*, ¶ 55). Plaintiff alleges that he experienced symptoms of dizziness, headache in the right temple area, and vision loss in his left eye the week of July 17, 2014. (*Id.*, ¶ 56). Plaintiff alleges that Heyd examined plaintiff on July 21, 2014 and jokingly expressed disbelief to plaintiff that he could not see out of his eye; however, after Heyd could not see into the back of plaintiff's eye on examination, Heyd placed plaintiff on the list to see the eye doctor at WCI and increased his blood pressure medication to the regular dosage. (*Id.*, ¶ 58). Plaintiff alleges that the eye doctor did not show for his scheduled appointments on July 22; plaintiff reported to unit staff the following day that he could not see out of his left eye, he felt dizzy, he had a headache, and he was concerned for his life due to further bleeding into his left eye; plaintiff was sent to medical services and seen by Heyd; and Heyd sent plaintiff to OSU Hospital when he determined he could not see into plaintiff's left eye. (*Id.*, ¶¶ 58, 59). Plaintiff was diagnosed by OSU Hospital medical staff with a retinal tear to his left eye and holes in his left and right retinas and it was determined he would be seen in one week to schedule surgery. (*Id.*, ¶ 60). When Dr. Heyd examined plaintiff on July

24 following plaintiff's return from OSU Hospital, he became unprofessional and belligerent for retaliatory reasons and informed plaintiff he was tired of plaintiff's "bellyaching," that Heyd had bent over backwards for plaintiff to be sent out on medical emergency, and that plaintiff was still not satisfied. (*Id.*, ¶ 61). Plaintiff underwent surgery by an ophthalmologist at OSU Hospital to repair his left retina on July 29, 2014; a cataract resulted which required a second surgery for lens replacement on June 2, 2015 (*Id.*, ¶ 62); since July 2014 he has had a left corneal scar which required hospitalization in August 2014, unclear vision in the left eye, a flashing pulse in that eye, extreme dryness, and the feeling that something has been left in his left eye; he underwent surgical replacement of the left eye lens on June 2, 2015 (*Id.*, ¶ 67); and on follow-up at OSU Hospital on June 11, 2015, plaintiff was told his left eye was slightly off center creating double vision, he had possible nerve damage, and laser surgery was to be completed within 30 days. (*Id.*, ¶ 68). Since August 6, 2015, plaintiff has experienced a flashing pulse, acute pain and the feeling of something being left in his left eye, and extreme dryness and decreasing vision in his right eye.

Plaintiff also alleges that defendant Heyd "refused to verify [his] need for medically approved size 12eee boots from his medical file so that mailroom would allow [him] to purchase them at his expense. . . ." (*Id.*, ¶ 69). He also alleges that Heyd attempted to alter plaintiff's shoe size on May 8, 2014. (*Id.*).

Defendants contend that plaintiff presented allegations related to his claims against defendant Heyd in the Ohio Court of Claims, Case No. 2016-00609. (Doc. 56, Exh. 3). Plaintiff filed the Court of Claims case on August 12, 2016 and named as defendants the ODRC and OSU Hospital. Plaintiff alleged that OSU Hospital performed surgery in August 2014 to repair a retinal tear, he developed a cataract on the eye post-surgery, and a corneal scar resulted from the

surgery. Plaintiff alleged that following the surgery, he had experienced symptoms in his left eye and the surgery caused limited vision in the eye, even though OSU Hospital had advised plaintiff that the membrane causing the limited vision would dissolve in several weeks. Plaintiff alleged his right eyesight was diminishing rapidly due to a cataract in that eye. He alleged that no follow-up treatment had been performed since the 2015 surgery even though he had been going to the medical unit and the eye doctor, and he had not been able to receive non-formulary artificial tears drops or ointment since the ophthalmologist at OSU Hospital had requested them in 2015. Plaintiff's claims were dismissed by the Court of Claims on summary judgment on June 12, 2017, because plaintiff failed to identify an expert witness who would testify on the standard of care as required under Ohio law and he had not introduced evidence to refute defendant's affidavit evidence. (Doc. 56, Exh. 3 at 4-8).

Plaintiff's case filed in the Court of Claims, like this lawsuit, involves the medical treatment plaintiff received for his eye impairments and related conditions at WCI and OSU Hospital. Plaintiff waived any Eighth Amendment claim for deliberate indifference to his medical needs related to those medical conditions and his course of treatment by filing his Court of Claims case alleging medical negligence in connection with the medical care he received for the same medical impairments. Plaintiff presented or could have presented his allegations of deliberate indifference to his medical needs by Dr. Heyd in the Court of Claims case he filed in August 2016. Thus, plaintiff waived his Eighth Amendment claim against Dr. Heyd by filing suit in the Court of Claims.

Assuming plaintiff did not waive his Eighth Amendment claim against Dr. Heyd, plaintiff has not alleged facts that satisfy the Eighth Amendment standard for a denial of medical care. (Doc. 56 at 20-21). Defendants contend that plaintiff has alleged nothing more than a

disagreement as to the course and effectiveness of the treatment he received. (*Id.*). Defendants argue that plaintiff does not allege deliberate indifference because Dr. Heyd sent plaintiff to see an eye doctor and then increased his blood pressure medication to the higher dose.

In order to state a claim for relief under 42 U.S.C. § 1983 for a denial of medical care, a prisoner "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. A prisoner who is allowed to suffer needlessly through a denial of medical care when relief is available has a cause of action under the Eighth Amendment against an individual whose deliberate indifference caused the suffering. Plaintiff must allege that prison officials have denied his reasonable requests for medical care when such need is obvious, and when he is susceptible to undue suffering or threat of tangible residual injury. *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976); *see also Estelle*, 429 U.S. at 106. Where medical assistance has been administered, such treatment must be so "woefully inadequate as to amount to no treatment at all" in order to give rise to a cause of action under § 1983. *Westlake*, 537 F.2d at 860-61 n.5. Allegations of negligence in diagnosing or treating medical conditions are not actionable under § 1983. *Estelle*, 429 U.S. at 106; *Westlake*, 537 F.2d at 860-61 n.5. A prison official may be held liable under the Eighth Amendment for denying proper medical care, only if "he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

The allegations of the amended complaint, taken as true, demonstrate that Heyd was not deliberately indifferent to plaintiff's medical needs at any point in time. Plaintiff alleges that Heyd treated him for his eye symptoms and high blood pressure, referred him to a specialist for his eye impairments, and sent him to OSU Hospital when he was unable to see into plaintiff's left eye on examination. (Doc. 35, ¶¶ 58, 59). Plaintiff alleges that Heyd halved his blood

pressure medication for retaliatory reasons, which caused plaintiff's "blood pressure to elevate" and resulted in symptoms of dizziness, headache in the right temple area, and vision loss in his left eye the week of July 17, 2014. (*Id.*, ¶¶ 55, 56). However, plaintiff also alleges that Heyd treated him for these symptoms by increasing his medication to the "regular dosage" when he examined plaintiff on July 21, 2014 and he placed plaintiff on the list to see an eye doctor at WCI. (*Id.*, ¶ 58). Further, although plaintiff alleges that Heyd questioned the veracity of plaintiff's complaint of loss of vision just before he examined him on July 21, 2014 and that Heyd was "unprofessional and belligerent" on July 24, 2014, plaintiff does not allege that Heyd declined to treat him or was otherwise indifferent to his medical needs. To the contrary, plaintiff alleges that Heyd placed him on the list to see an eye doctor and increased his blood pressure medication on July 21, 2014. Heyd's demeanor toward plaintiff and his comments do not constitute punishment that would support an Eighth Amendment claim. *Violett*, 76 F. App'x at 27. Plaintiff has not stated a claim to relief against defendant Heyd based on his allegedly inadequate medical treatment of plaintiff's high blood pressure and eye conditions.

Plaintiff's only other allegation against Heyd is that on an unspecified date, he "refused to verify Plaintiff's need for medically approved size 12eee boots from his medical file so that mailroom would allow [him] to purchase them at his expense. . . ." (*Id.*, ¶ 69). He also alleges that Heyd and other defendants attempted to alter plaintiff's shoe size on May 8, 2014. (*Id.*). Accepting that Heyd knew of plaintiff's need for medically approved boots, plaintiff nonetheless has not stated an Eighth Amendment claim for deliberate indifference against Heyd based on Heyd's refusal to verify plaintiff's need for the boots or his attempt to change plaintiff's shoe size. Plaintiff alleges that defendant Crutchfield authorized the shoes as early as October or November of 2014 (*Id.*, ¶ 70), and plaintiff does not allege that he suffered any injury as a result

of Heyd's actions in the interim between the date Heyd refused to authorize the shoes and the date Crutchfield gave the authorization. *Farmer*, 511 U.S. at 847. Plaintiff does not allege that he was susceptible to pain or suffering or that he faced the threat of "tangible residual injury" as a result of Heyd's action. *See Westlake*, 537 F.2d at 860.

In addition to failing to state a claim for violation of his Eighth Amendment rights against defendant Heyd, plaintiff has failed to state a claim to relief for retaliation against Heyd. Plaintiff has not made any allegations in the second amended complaint which suggest that Heyd mistreated plaintiff so as to satisfy the adverse action prong, and neither has plaintiff alleged any facts to suggest there was a causal connection between protected activity that he engaged in at some point and any act or omission by Heyd. *See Shehee*, 199 F.3d at 300-01. Plaintiff's claims against defendant Heyd should be dismissed.

### 5. Motion to dismiss under Fed. R. Civ. P. 20

In the event the Court does not dismiss the complaint under Fed. R. Civ. P. 12(b)(6), defendants argue the Court should dismiss the complaint under Fed. R. Civ. P. 20 and the precedent that prohibits the filing of "buckshot" complaints. Defendants contend that plaintiff's pleading is a buckshot complaint because it joins "otherwise unrelated claims and fourteen defendants from two separate prisons into one action." (Doc. 56 at 26). Defendants argue that all of plaintiff's claims, except one of the Court's choosing, should be dismissed and plaintiff should be required to file additional lawsuits.

Defendants' argument is not well-taken. This case is distinguishable from the misjoinder decision cited by defendants, *George*, 507 F.3d 605, where the plaintiff filed 50 different claims but did not allege that the claims were connected in any manner. Here, plaintiff alleges that his claims against multiple defendants are part of a campaign of retaliation or harassment in

response to plaintiff's filing of complaints, grievances and complaints originally stemming from Malott's actions. While the Court has determined that all but one of plaintiff's claims should be dismissed under Rule 12(b)(6) because they fail to state a claim to relief, dismissal of the complaint under Rule 20 for misjoinder of defendants is not warranted under the very liberal joinder provisions of Rule 20. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966) ("Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.") (footnote omitted). Defendants' request for dismissal on the basis of misjoinder should therefore be denied.

## IT IS THEREFORE ORDERED THAT:

(1)  Plaintiff's motion for an extension of time to serve defendants Dr. Carlson, Mona Parks, Brenda Tilton, M. Westall, and George D. Crutchfield (Doc. 95) is **DENIED**.

## IT IS THEREFORE RECOMMENDED THAT:

(1) Plaintiff's motion for recusal of District Judge Susan J. Dlott (Doc. 101) be **DENIED**.

(2) Plaintiff's third motion for leave to supplement the second amended complaint under Fed. R. Civ. P. 15(d) (Doc. 104) be **DENIED**.

(3) Defendants' motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim to relief (Doc. 56) be **DENIED** as to plaintiff's Eighth Amendment claim against defendant Malott and **GRANTED** as to plaintiff's claims brought against all other defendants.

Date: 3/1/18

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

BRIAN K. ALFORD,
    Plaintiff,

vs.

GARY MOHR, et al.,
    Defendants.

Case No. 1:15-cv-645

Dlott, J.

Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).