UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BRIAN K. ALFORD,
Plaintiff,

Case No. 1:15-cv-645
McFarland, J.
Litkovitz, M.J.

vs.

GARY MOHR, et al.,
Defendants.

**REPORT
AND RECOMMENDATION**

Plaintiff Brian K. Alford, a former inmate at the Lebanon Correctional Institution (LeCI), brings this action under 42 U.S.C. § 1983 against Rick Malott, the supervisor of the "Heating Ventilation and Refrigeration Department" at LeCI.[1] Plaintiff alleges that defendant Malott violated his Eighth Amendment rights by exhibiting deliberate indifference to his health from February 5 to October 8, 2013, when Malott intentionally vented dangerous refrigerants into the atmosphere, putting plaintiff's life in imminent danger of death or serious bodily harm. This matter is before the Court on defendant's motion for summary judgment and supporting exhibits (Doc. 139), plaintiff's memorandum in opposition (Doc. 143), and defendant's reply memorandum (Doc. 144).[2]

**I. FACTS**

**1. Plaintiff's amended complaint**

Plaintiff alleges that between February 5, 2013 and October 8, 2013, he worked in the HVAC apprenticeship program at LeCI. (Doc. 35, ¶ 42). He alleges that throughout that time

---

[1] Defendant Malott is the sole remaining defendant in this case.
[2] Plaintiff filed a "response" to defendant Malott's reply memorandum without first seeking leave of court or showing good cause in violation of S.D. Ohio Civ. R. 7.2(a)(2). (Doc. 145). Therefore, the Court will not consider plaintiff's supplemental memorandum in its resolution of defendant's motion for summary judgment.

frame, defendant Malott intentionally vented dangerous refrigerants into the atmosphere, putting plaintiff in imminent danger of death or serious bodily harm. (*Id.*, ¶ 44). Plaintiff states that Malott never used recovery equipment or recovery cylinders to meet safe disposal requirements before disposing of or repairing refrigeration equipment, and upon information and belief, the recovery machine in the refrigeration department was inoperable during this time. (*Id.*, ¶ 46; Exh. A). Plaintiff alleges that as a result of Malott's actions, he suffered permanent damage to his eyes and required two surgeries and three hospitalizations. (*Id.*, ¶ 44). Plaintiff alleges that he was exposed to CFC, HCFC, and HFC refrigerants which caused damage to his retinas, requiring several surgeries and admittance to Franklin Medical Center and Ohio State University Hospital ("OSU"). (*Id.*, ¶¶ 44-46).

### 2. Defendant Malott's evidence

At LeCI, when a cooling system such as an air conditioner needs repair or disposal, its refrigerant is removed before the repair or disposal. (Doc. 139-7, Westall Affidavit, ¶ 6). This is because a refrigerant is a controlled hazardous waste which is to be disposed of properly according to the safety data sheet and Environmental Protection Agency ("EPA") guidelines. *Id.* When a refrigerant must be removed, a separate recovery machine is utilized to ensure the refrigerant is properly removed to prevent the release of refrigerant. (*Id.*, Westall Affidavit, ¶ 7). The recovery machine is connected to the air conditioning unit to remove the refrigerant prior to repair or disposal. *Id.* At the time of the alleged incident, LeCI had multiple recovery machines that could handle this process in the event a specific recovery machine was in use or otherwise unavailable. *Id.*

On October 13, 2013, plaintiff filed an informal complaint alleging Malott, his former supervisor in refrigeration, had been improperly handling CFC, HCFC, and HFCs (refrigerants) since February 2013. (Doc. 139-2 at 2). Plaintiff stated his eyesight had greatly diminished between February 2013 and October 2013. *Id.* He also stated that he suffered from heart palpitations. *Id.*

2

The informal complaint was denied. *Id.* On October 22, 2013, plaintiff filed a Notification of Grievance alleging the same complaint, but additionally he alleged that Malott failed to use proper recovery cylinders when handling refrigerants. (Doc. 139-2 at 3). In investigating the Grievance, Mr. Martin Westall, the LeCI Maintenance Supervisor and Direct Supervisor of defendant Malott, was interviewed. (*Id.* at 4). Mr. Westall confirmed that Malott consistently followed proper procedures, and he had never received any complaints regarding Malott, including from plaintiff during his assignment in refrigeration. (*Id.*). Mr. Westall stated that CFCs were never used and had been phased out by the EPA in 1996. (*Id.*; Doc. 139-7, Westall Affidavit, ¶ 8). Mr. Westall routinely checked maintenance logs and the various cooling systems to ensure proper maintenance. (Doc. 139-7, Westall Affidavit, ¶ 12). Plaintiff's job assignment in refrigeration was voluntary and a transfer could be made in accordance with ODRC policy 54-WRK-02. (*Id.*, Westall Affidavit, ¶ 15; Doc. 139-6, Malott Declaration, ¶ 10).

Plaintiff's medical records for the relevant time period show he had no heart palpitations and a regular heartbeat. (Doc. 139, Ex. 2 at 1, 4). The medical records also show plaintiff had a relatively stable eye prescription. (*Id.* at 2, 8, 23, 101, 134). In July 2014, while assigned to the prison bakery, plaintiff complained he had lost vision in his left eye for one week. (*Id.* at 16). He reported that he first noticed floaters in his left eye while working in the bakery and that he was currently unable to discern images or objects with his left eye. *Id.* Plaintiff's OSU medical records do not reflect any complaints from plaintiff regarding trauma to the eye or exposure to refrigerants. (Doc. 139, Ex. 2 *generally*). In August 2014, plaintiff was diagnosed with a retinal detachment in his left eye and underwent surgical repair. (*Id.* at 37-38). Post-surgery, plaintiff suffered a complication, specifically a corneal ulcer, which was treated. (*Id.* at 57). Later, in 2015, plaintiff was diagnosed with a senile cataract (also known as an age-related cataract) in his left eye—which was treated with cataract surgery. (*Id.* at 105 (*diagnosis*), 115-116 (*surgery*)). The medical records do not show a

3

relationship between plaintiff's nine-month 2013 job assignment in refrigeration and plaintiff's subsequent eye issues in 2014 and 2015. (Doc. 139, Ex. 2 generally).

**2. Plaintiff's evidence**

Plaintiff submits his own declaration and affidavit in opposition to defendant Malott's motion for summary judgment. Plaintiff states that since 1998, he worked at various state and federal HVAC departments as an apprentice, including from February 5, 2013 to October 8, 2013 at LeCI under defendant Malott. (Doc. 143 at 15, 53-54). He states that as a result of performing his duties in these various programs, he has personal knowledge and training in the proper use, storage, and recovery of hazardous waste (refrigerants) contained in cooling systems, including knowledge of the recovery efficiency requirements covered in ARI 740 Standards and Section 608 of the Clean Air Act of 1990 for safe disposal requirements. (*Id.*). His duties included the repair, service, maintenance, installation, and scrapping of cooling systems. (*Id.*). Plaintiff alleges:

> [D]uring the period of February 5th, 2013 to October 8th, 2013 Defendant Rick Malott routinely committed intentional venting of dangerous CFC, HCFC, and HFC hazardous waste during the service, installation, scrapping and repair fo (sic) cooling systems. There was no working recovery machine in operation during this period of time or utilized from February 5th, 2013 to October 8th, 2013.

(Doc. 143 at 16, ¶ 6; *see also* Doc. 143 at 19, ¶ 8).[3] Plaintiff also states during the relevant period at LeCI, there was one cylinder of CFC R-12 that was utilized for repairs of older cooling systems. (Doc. 143 at 16, ¶ 8; Doc. 143 at 19, ¶ 9). Plaintiff states that defendant Malott "never utilized refrigerant usage logs for disposal cylinders, refillable cylinders or the recovery machines which were inoperable." (Doc. 143 at 19, ¶ 10). He also states:

> That no repairs[,] service, installation or scrapping of cooling systems could have been properly performed without the use of refrigerant recovery machine usage

---

[3] Plaintiff alleges he worked with three other inmates under defendant Malott who could "verify" there were no operable recovery machines available at LeCI. However, plaintiff has not presented any evidence from these inmates.

4

logs, refrigerant cylinder usage logs (disposable and refillable) and recycling machine usage logs to ensure safe disposal requirements of the Clean Air Act and ARI 740 Standards for recovery efficiency.

(Doc. 143 at 16, ¶ 12).[4] Plaintiff states he reported the alleged violations to the EPA and LeCI unit staff. (Doc. 143 at 19, ¶ 11).

Plaintiff alleges that prior to his time working under defendant Malott in the LeCI refrigeration department, he had never been diagnosed with retinal defects. However, after October 8, 2013, he "suffered permanent damage to both of [his] eyes, constant pain and discomfort, flashing pulse, sticky discharge, extreme dryness, laser surgeries, cataracts, lens replacement, distorted vision and corneal scar." (Doc. 143 at 16, ¶ 10; *see also* Doc. 143 at 20, ¶¶ 17-18).

## B. SUMMARY JUDGMENT STANDARD

Fed. R. Civ. P. 56 allows summary judgment to secure a just and efficient determination of an action. The court may only grant summary judgment as a matter of law when the moving party has identified, as its basis for the motion, an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Id.* at

---

[4] Plaintiff's declaration and affidavit include statements that defendant Malott and Mr. Westall "committed perjury," that LeCI officials did "no adequate, viable investigation" into Malott's alleged "violations," and "that recovery machine usage logs for recovery machine, disposal and refillable cylinders could not have been competently performed under EPA Regulations. . . ." (Doc. 143 at 16-17, ¶¶ 11, 13, 14). An affidavit and declaration must be based on personal knowledge and not legal conclusions. Fed. R. Civ. P. 56(c)(4). Likewise, plaintiff presents a "letter" from another inmate in support of his claim. This letter is unsigned and unsworn and does not constitute competent evidence. Therefore, the Court disregards such letter and statements in plaintiff's declaration and affidavit.

255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)). However, a district court need not view the facts in the light most favorable to the nonmoving party if that party's version of events is "blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

When a defendant has identified the shortfall in a plaintiff's case, the plaintiff must come forward with evidence establishing a material issue of fact for resolution by the fact-finder. *Anderson*, 477 U.S. at 252. The Court is not obligated to "comb through the record to ascertain whether a genuine issue of material fact exists." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 492 (6th Cir. 2000) (citing *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 407, 410 (6th Cir. 1992)).

The court is not to weigh the evidence and determine the truth of the matter but is to decide whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.* (citing *Cities Serv.*, 391 U.S. at 288-289). If the evidence is merely colorable, *Dombrowski v. Eastland*, 387 U.S. 82, 84 (1967), or is not significantly probative, *Cities Serv.*, 391 U.S. at 290, judgment may be granted. *Anderson*, 477 U.S. at 249.

## C. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED.

The Eighth Amendment requires that prison officials "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To establish an Eighth Amendment claim against prison officials based on their failure to protect the plaintiff from harm, a plaintiff must present evidence showing that the defendant's conduct amounted to "deliberate indifference" to a known risk of harm. *Farmer*, 511 U.S. at 837. *See also Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997). Deliberate indifference includes both objective

and subjective elements. *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001); *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011). The objective element requires the harm to be "sufficiently serious." *Curry*, 249 F.3d at 506 (quoting *Farmer*, 511 U.S. at 834). Therefore, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* The subjective element focuses on whether prison officials know that inmates face a substantial risk of harm and "disregard[] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. Prison officials must exhibit more than lack of due care for a prisoner's safety before an Eighth Amendment violation will be found. *Id.* at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. It is not enough that the official "should" have perceived a significant risk but did not. *Id.*

Plaintiff claims that defendant Malott was deliberately indifferent to a known serious health risk by venting refrigerants into the prison environment without using proper recovery procedures and equipment. Plaintiff claims that defendant Malott's actions resulted in "permanent damage to both of [his] eyes, constant pain and discomfort, flashing pulse, sticky discharge, extreme dryness, laser surgeries, cataracts, lens replacement, distorted vision and corneal scar." (Doc. 143 at 16, ¶ 10).

Plaintiff has failed to adduce evidence creating a genuine issue of fact on the causation element of his § 1983 claim. "[P]roximate causation is an essential element of a § 1983 claim for damages. That is, a violation of a federally secured right is remediable in damages only upon proof that the violation proximately caused injury." *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 442 F.3d 410, 443 (6th Cir. 2006), *rev'd and remanded on other grounds* 551 U.S. 291 (2007) (internal quotation marks omitted). *See also Horn by Parks*

7

*v. Madison Cty. Fiscal Court*, 22 F.3d 653, 659 (6th Cir. 1994) ("[A] violation of a federally secured right is remediable in damages only upon proof that the violation proximately caused injury."). Plaintiff cannot recover unless he establishes a causal connection between defendant Malott's challenged conduct and the harm plaintiff allegedly suffered, which "is an essential element of a § 1983 claim." *Horn*, 22 F.3d at 659. To avoid summary judgment, plaintiff "must, at a minimum, come forward with such evidence that a reasonable juror could find by a preponderance of the evidence to a reasonable medical probability that the alleged constitutional violation (conscious disregard of a serious risk of [refrigerant exposure]) caused [] plaintiff's injury." *Wooler v. Hickman Cty., Kentucky*, No. 5:05-cv-247, 2008 WL 5412826, at *12 (W.D. Ky. Dec. 30, 2008), *aff'd sub nom. Wooler v. Hickman Cty., Ky.*, 377 F. App'x 502 (6th Cir. 2010) (citing *Doe v. Sullivan Cty., Tenn.*, 956 F.2d 545, 550 (6th Cir. 1992)).

Assuming for purposes of the motion for summary judgment that defendant Malott released refrigerant into the atmosphere of the prison, which posed a risk of harm to plaintiff, plaintiff has nevertheless failed to demonstrate that Malott's actions were the proximate cause of his injuries. None of plaintiff's medical records during or subsequent to the time he worked with defendant Malott show any connection whatsoever between plaintiff's eye conditions and exposure to refrigerants. Plaintiff's conclusory allegation of causation, which is premised on his assertion that he only began suffering from eye maladies after he stopped working for defendant Malott in October 2013, is insufficient to establish the requisite proximate cause. "[W]hen a plaintiff's § 1983 claim of deliberate indifference involves a sophisticated medical condition, plaintiff must come forward with expert testimony sufficient to show causation." *Wooler*, 2008 WL 5412826, at *12 (citing *Alberson v. Norris*, 458 F.3d 762, 765-66 (8th Cir. 2006)). On summary judgment, "more is required than plaintiff's naked assertion that the [injury] would not

8

have occurred but for the offensive conditions. To hold otherwise would effectively transform the causality requirement from a substantive element of proof into one of pleading." *Doe*, 956 F.2d at 550. *See also Maston v. Montgomery Cty. Jail Med. Staff Pers.*, 832 F. Supp. 2d 846, 852 (S.D. Ohio 2011) ("Without any medical evidence substantiating either Plaintiff's purported history of epilepsy or evidence demonstrating that the deprivation of medication *caused* the injuries here, Plaintiff fails to establish either component of his deliberate indifference claim.").

Plaintiff has failed to produce any expert or other evidence showing a causal relationship between his left eye retinal detachment, corneal ulcer, or cataract condition and any alleged exposure to refrigerants during the nine months in 2013 that he worked under defendant Malott. Plaintiff's speculative assertion that defendant Malott's actions must have caused his eye problems because plaintiff did not experience eye problems prior to working with defendant Malott is simply insufficient, in itself, to establish an essential element of his § 1983 claim. *Doe*, 956 F.2d at 550. Plaintiff has produced no evidence establishing a causal connection between defendant Malott's challenged conduct and the eye conditions he suffered. As a result, his § 1983 claim fails as a matter of law.

### IT IS THEREFORE RECOMMENDED THAT:

1. Defendant Malott's motion for summary judgment (Doc. 139) be **GRANTED**.[5]
2. This case be **CLOSED** on the docket of this Court.
3. The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of any Court Order adopting this Report and Recommendation would not be

---

5 Defendant Malott also argues that he is entitled to qualified immunity. Qualified immunity protects government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Court need not address whether defendant Malott is entitled to qualified immunity because the record shows there is no genuine dispute as to whether defendant Malott violated plaintiff's Eighth Amendment rights, and defendant Malott is therefore entitled to summary judgment.

taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

Date: 3/12/2020

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

BRIAN K. ALFORD,
Plaintiff,

Case No. 1:15-cv-645
Dlott, J.
Litkovitz, M.J.

vs.

GARY MOHR, et al.,
Defendants.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).